**24-6806**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JASON HINTZE,
Plaintiff-Appellee,

v.

CHARLES DANIELS, et al.
Defendants-Appellants.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,
D.C. No. 3:22-cv-00436-MMD-CLB

---

## DEFENDANTS-APPELLANTS' OPENING BRIEF

---

Respectfully submitted by:
AARON D. FORD
Attorney General
CHRIS DAVIS (Nevada Bar No. 6616)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-9252 (phone)
cwdavis@ag.nv.gov
*Attorneys for Defendants-Appellants*
*Charles Daniels, Harold Wickham,*
*Brian Williams, Tim Garrett,*
*Kara LeGrand, and Kirk Widmar*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ...................................................................ii

TABLE OF AUTHORITIES .........................................................iv

I.     INTRODUCTION.................................................................1

II.    JURISDICTIONAL STATEMENT ....................................2

III.   STATEMENT OF THE ISSUES PRESENTED.............3

IV.    STATEMENT OF CASE AND PROCEDURAL HISTORY ...........3

V.     STANDARD OF REVIEW ...................................................10

VI.    SUMMARY OF ARGUMENT.........................................11

VII.   ARGUMENTS ......................................................................13

      A.     Defendants Are Entitled to Qualified Immunity under Established Precedent .........................................................13

      B.     The District Court Erred by Considering Allegations Unsupported by Evidence that Would Be Admissible at Trial .....................................................................................15

      C.     Defendants Are Entitled to Qualified Immunity Because They Did *NOT* Violate the Eighth Amendment ....20

      D.     Hintze Failed Establishing that Each Defendant Personally Violated the Eighth Amendment.........................22

      E.     Hintze's Conditions of Confinement During the COVID-19 Pandemic Did *NOT* Violate the Eighth Amendment .......................................................................27

F.   Hintze Failed to Establish that Any Supposed
     Shortcomings When Implementing NDOC's COVID-19
     Protocols Caused Hintz to Contract COVID-19 ................... 30

G.   Hintze Cannot Establish an Eighth Amendment
     Violation Because He Failed to Establish that His
     Health Was Harmed ............................................................ 32

H.   Hintze Failed to Meet His Burden of Establishing a
     Violation of Clearly Established Law, Beyond Debate,
     Required to Overcome Qualified Immunity ........................ 33

VIII.  CONCLUSION ................................................................................. 36

CERTIFICATE OF COMPLIANCE ........................................................ 37

CERTIFICATE OF SERVICE ................................................................. 38

iii

# TABLE OF AUTHORITIES

## CASES

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001)....................................................................... 10, 33

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)................................................. 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................... 21, 22, 23

*Bank Melli Iran v. Pahlavi*, 58 F.3d 1406 (9th Cir. 1995)..................... 15

*Bearchild v. Cobban*, 947 F.3d 1130 (9th Cir. 2020) ............................ 31

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ............................................... 2

*Berry v. Bunnell*, 39 F.3d 1056 (9th Cir. 1994)...................................... 32

*Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003)......................................... 22

*Campbell v. California Dept. of Corr. & Rehab.*, 463 Fed. Appx. 634, 2011 WL 6425312 (9th Cir. 2011)............................................... 30

*Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024)............................................................................ 14, 35

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).......................................... 11

*City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9 (2021)...................... 14

*Cox v. Benedetti*, 114 Fed. Appx. 939, 2004 WL 2915113 (9th Cir. 2004)....................................................................................................... 19

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000)............................ 33

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ........................ 10, 11

iv

*Doe v. Regents of the Univ. of California*, 891 F.3d 1147 (9th Cir. 2018) ................................................................................................. 2

*Farmer v. Brennan*, 511 U.S. 825 (1994) ........................................ 20, 21

*Felkins v. City of Lakewood*, 774 F.3d 647 (10th Cir. 2014) ............... 19

*Fraihat v. U.S. Immigration & Customs Enf't*, 16 F.4th 613 (9th Cir. 2021) ............................................................................................ 27, 28

*Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010) ................................. 18

*Haggerty v. Fed. Ins. Co.*, 32 Fed. Appx. 845 2002 WL 463573 (9th Cir. 2002) ........................................................................................... 17

*Hampton v. California*, 83 F.4th 754 (9th Cir. 2024) ........................... 34

*Hudson v. Palmer*, 468 U.S. 517 (1984) ............................................ 20

*In re Brazier Forest Products, Inc.*, 921 F.2d 221 (9th Cir. 1990) .......... 11

*Intermountain Fair Housing Council v. Boise Rescue Mission Ministries*, 657 F.3d 988 (9th Cir. 2011) ................................ 16, 17

*Jones v. Williams*, 297 F.3d 930 (9th Cir. 2002) ............................ 21, 23

*Kayser v. Caspari,* 16 F.3d 280 (8th Cir. 1994) .................................. 18

*Kisela v. Hughes*, 584 U.S. 100 (2018) ........................................... 14, 15

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988) ................................. 22, 30

*Lowry v. City of San Diego*, 858 F.3d 1248 (9th Cir. 2017) ................. 17

*McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) ................................ 23

*Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975 (9th Cir. 2006) .......................................................................................... 10, 11

*Montgomery v. Pinchak*, 294 F.3d 492 (3d Cir. 2002) ....................... 18, 19

*Orr v. Bank of Am., NT & SA*, 285 F.3d 764 (9th Cir. 2002) ................16

*OSU Student Alliance v. Ray*, 699 F.3d 1053 (9th Cir. 2012) ...............23

*Panchev v. Pac. Gas & Elec. Co.*, 825 Fed. Appx. 462, 2020 WL
    5511817 (9th Cir. 2020) ........................................................31

*Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)................................26

*Reichle v. Howards*, 566 U.S. 658 (2012).......................................13, 14

*Reilly v. Vadlamudi*, 680 F.3d 617 (6th Cir. 2012)................................23

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021) ....................................14

*River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d
    1458 (9th Cir. 1992) ............................................................11

*Salazar v. Cnty. of Orange*, 564 Fed. Appx. 322, 2014 WL 1017070
    (9th Cir. 2014)...................................................................23

*Swain v. Junior*, 961 F.3d 1276 (11th Cir. 2020) ................................28

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989)..................................16, 23

*Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004)...........................24, 25

*Valentine v. Collier*, 978 F.3d 154 (5th Cir. 2020) ...............................28

*Walker v. Shansky*, 28 F.3d 666 (7th Cir. 1994) ..................................19

*Whittaker v. Morgan State Univ.*, 524 Fed. Appx. 58, 2013 WL
    2350425 (4th Cir. 2013) .....................................................16

*Wilhelm v. Rotman*, 680 F.3d 1113 (9th Cir. 2012) ..............................32

*Williams v. Wood*, Case No. 06–55052, 223 Fed. App'x 670 (9th
    Cir. 2007).........................................................................21

## <u>STATUTES</u>

28 U.S.C. § 1291 ................................................................. 2

42 U.S.C. § 1983 ........................................................... 23, 31

## <u>RULES</u>

9th Cir. R. 32-1 ............................................................... 37

Fed. R. App. P. 32 ........................................................... 37

Fed. R. App. P. 4 ............................................................... 2

Fed. R. Civ. P. 56 ............................................................ 10

Fed. R. Evid. 701 ............................................................ 19

## I.  INTRODUCTION

The district court erred when denying the motion for summary judgment of Defendants-Appellants Charles Daniels, Harold Wickham, Brian Williams, Tim Garrett, Kara LeGrand, and Warden Kirk Widmar, who all asserted their entitlement to qualified immunity as employees or former employees of the Nevada Department of Corrections (NDOC).  Contrary to the unsupported allegations in Plaintiff-Appellee Jason Hintze's complaint, Defendants did not violate the Eighth Amendment when they appropriately responded to the unprecedented COVID-19 pandemic by implementing the policies adopted by NDOC's medical director for combating COVID-19 when Hintze was housed at the Lovelock Correctional Center (LLC).

Hintze failed to offer any evidence, admissible at trial, establishing that any Defendant personally and knowingly disregarded an objective, substantial, intolerable risk of harm required to establish an Eighth Amenmdment violation.  While Hintze eventually tested positive for COVID-19 in January 2022, Hintze fails to identify any action taken by any Defendant in the year prior to testing positive, much less action which can in any way be deemed the cause of his positive test.  Hintze therefore cannot make the required showing that each Defendants' personal, individual actions caused Hintze harm.

1

Hintze therefore failed to establish a violation of the Eighth Amendment, much less establish a violation of clearly established law, beyond debate, necessary to overcome Defendants' entitlement to qualified immunity. As Defendants are shielded by qualified immunity, the district court erred when denying Defendants' motion for summary judgment. This Court should therefore reverse the district court's judgment denying Defendants' motion to dismiss, and remand with instructions to grant the motion.

## II.    JURISDICTIONAL STATEMENT

This Court has jurisdiction over Defendants' appeal pursuant to 28 U.S.C. § 1291 because Defendants' notice of appeal (2-ER-177-79) was timely filed on November 7, 2024 (2-ER-177-79), within thirty (30) days after the district court entered its order, on October 8, 2024 (1-ER-2-9), denying Defendants' motion for summary judgment asserting qualified immunity. *See* Fed. R. App. P. 4; *see also Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996) (holding "an order rejecting the defense of qualified immunity" is a "'final' judgment subject to an immediate appeal," which may be raised "at either the dismissal stage or the summary judgment stage"); *Doe v. Regents of the Univ. of California*, 891 F.3d 1147, 1152, (9th Cir. 2018) (holding this Court has "jurisdiction over an interlocutory appeal from the denial of Eleventh Amendment immunity under the collateral order doctrine").

2

## III.   STATEMENT OF THE ISSUES PRESENTED

**A.**   Whether the district court erred when denying Defendants' motion for summary judgment, with respect to Plaintiff's claim that Defendants violated the Eighth Amendment when responding to an unprecedented global pandemic, when Plaintiff failed to meet his burden of establishing, with evidence that would be admissible at trial, that each Defendant personally and knowingly disregarded an objective, substantial, intolerable risk of serious harm which proximately caused Plaintiff harm.

**B.**   Whether Plaintiff failed to meet his burden of proof that each Defendants' own actions personally violated a right, clearly established beyond debate, required to overcome Defendants' entitlement to qualified immunity.

## IV.   STATEMENT OF CASE AND PROCEDURAL HISTORY

Hintze is an offender legally incarcerated in NDOC custody and housed at Lovelock Correctional Center. 2-ER-137, ECF No. 7 at 1. In response to the unprecedented COVID-19 pandemic, in February 2020, NDOC added COVID-19 to Medical Directive 231, Communicable Diseases, which provided guidance to custody and medical staff for proper procedure in responding to communicable diseases. 2-ER-74, ECF No. 38-2 at 7. On March 12, 2020, a day before President Donald Trump declared a nationwide emergency, Governor Steve Sisolak issued

3

a Declaration of Emergency to facilitate Nevada's response to the COVID-19 pandemic. 2-ER-65-67, ECF No. 38-1 at 2-4. Beginning in March 2020, the NDOC Medical Director established specific protocols for addressing COVID-19, in accordance with CDC guidelines. 2-ER-69-74, 80-118; ECF Nos. 38-2 at 2-7, 38-4 at 2-36. These policies were fully implemented to ensure all NDOC staff and offenders are properly isolated and tested for COVID-19. 2-ER-69-74, 120-22; ECF Nos. 38-2 at 2-7, 38-6 at 2-4. Pursuant to those policies, staff members were tested for COVID-19 every two weeks. 2-ER-74, ECF No. 38-2 at 7. If any staff member exhibited any COVID-19 symptoms or tested positive for COVID-19, they were immediately sent home if working or told to stay at home if not working. 2-ER-74, ECF No. 38-2 at 7. Offenders that complained of or were exhibiting any COVID-19 symptoms were isolated and tested for COVID-19. 2-ER-74, ECF No. 38-2 at 7. Offenders remained isolated until their tests returned with negative results. 2-ER-74, ECF No. 38-2 at 7.

Offenders and staff were provided masks and were required to wear them. 2-ER-74, ECF No. 38-2 at 7. Offenders and staff were given hand sanitizer and soap and were encouraged to frequently wash their hands. 2-ER-74, ECF No. 38-2 at 7. All surfaces at the institutions were cleaned by Surface Sanitation teams, using a 10% bleach solution. 2-ER-74, ECF No. 38-2 at 7. As of June 25, 2020, due

4

to the diligence of NDOC staff, NDOC had the 8th lowest positive COVID-19 infection rate of offenders in the nation. 2-ER-77-78, ECF No. 38-3 at 2-3. By the end of June, all the offenders had been tested and only 23 or .19% of all offenders tested positive for COVID-19. 2-ER-117, ECF No. 38-5 at 3. NDOC also tested its entire workforce and only 84 or .9% of staff tested positive. 2-ER-117, ECF No. 38-5 at 3.

During the entirety of the COVID-19 pandemic, LCC followed all policies and procedures pertaining to COVID-19 that was established by the CDC and the NDOC, including, but not limited to: mandatory screening and testing for COVID-19, mandatory quarantine periods; mandatory distancing protocols as available, mandatory mask mandates, and mandatory cleaning and disinfecting protocols. 2-ER-120-21, ECF No. 38-6 at 2-3. If a staff member at LCC did not follow the policies, procedures, and protocols put in place by the CDC, NDOC, or LCC, they would be instructed to do so. 2-ER-121, ECF No. 38-6 at 3. If the staff member refused or otherwise failed to comply, progressive discipline would be initiated and could include a write-up or reprimand. 2-ER-121, ECF No. 38-6 at 3.

Likewise, if an offender at LCC did not follow the policies, procedures, and protocols put in place by the CDC, NDOC, or LCC, they would be instructed to do so. 2-ER-121, ECF No. 38-6 at 3. If the offender refused or otherwise failed to comply, they would be

5

reprimanded, which could include a disciplinary charge. 2-ER-121, ECF No. 38-6 at 3.

On November 6, 2020, NDOC implemented new COVID-19 policy revisions. 2-ER-73, ECF No. 38-2 at 6. NDOC staff members and offenders who exhibited signs or tested positive for COVID-19 were required to be quarantined for at least 10 days, with at least the last 72 hours of that time being free of any symptoms. 2-ER-73, ECF No. 38-2 at 6. Staff members who had contact with those who had contracted COVID-19 were to be tested. 2-ER-73, ECF No. 38-2 at 6. Offenders transferring from outside NDOC were required to be quarantined. 2-ER-73, ECF No. 38-2 at 6. Quarantined offenders were required to have 2 negative COVID-19 test results and no symptoms before returning to general population. 2-ER-73, ECF No. 38-2 at 6.

As the pandemic progressed, NDOC continued to update its protocols (2-ER-69-73, ECF No. 38-2 at 2-6), and LCC would likewise update their policies, procedures and protocols to ensure compliance (2-ER-120-22, ECF No. 38-6 at 2-4). For example, at the beginning of the COVID-19 pandemic, all offenders were fed in their respective housing units. 2-ER-121, ECF No. 38-6 at 3. As more tools and equipment became available for sanitation and disinfection, large areas began to be used again. 2-ER-121, ECF No. 38-6 at 3. As a result, the cafeterias ("chow halls") began to be used to feed those offenders who were not

placed in quarantine or isolation, i.e. offenders who did not have COVID-19 or were not showing signs of COVID-19. 2-ER-121, ECF No. 38-6 at 3. Offenders who were able to use the chow halls would do so with their respective units to ensure no cross infection between units. 2-ER-121, ECF No. 38-6 at 3. After each unit left the chow hall, the chow hall would be disinfected and sanitized prior to another unit being allowed to feed in the chow hall. 2-ER-121, ECF No. 38-6 at 3.

Offenders who tested positive for COVID-19 were moved into an isolation unit with other offenders who also tested positive for COVID-19 and kept separated from the rest of the population. 2-ER-121, ECF No. 38-6 at 3. Offenders who were exposed to COVID-19 were quarantined with other offenders who were also exposed to COVID-19, and they were placed in separate units for monitoring of any signs and symptoms of COVID-19. 2-ER-121-22, ECF No. 38-6 at 3-4. These quarantined offenders were fed in their respective housing units and were not allowed to use the chow hall. 2-ER-122, ECF No. 38-6 at 4. With the addition of foggers used to disinfect and sanitize large areas, quarantined offenders were allowed to feed in the chow hall after other units. 2-ER-122, ECF No. 38-6 at 4. The chow hall was then cleaned, disinfected and sanitized. 2-ER-122, ECF No. 38-6 at 4.

On March 9, 2021, Hintze's temperature was normal, and he affirmed that he was free of COVID-19 symptoms. Sealed 3-ER-208,

7

Sealed MSJ Exhibit A. On April 20, 2021, after being advised of the potential adverse medical consequences of refusing the COVID-19 vaccine, Hintze refused the vaccine. Sealed 3-ER-199, Sealed MSJ Exhibit A. On July 28, 2021, Hintze requested additional information on the COVID-19 vaccine, which was provided. Sealed 3-ER-235, Sealed MSJ Exhibit A. On July 31, 2021, Hintze requested to be placed on the list to receive the COVID-19 vaccine once it became available, which request was approved. Sealed 3-ER-199, Sealed MSJ Exhibit A. On August 17, 2021, Hintze authorized medical staff to administer the COVID-19 vaccine. Sealed 3-ER-270, Sealed MSJ Exhibit A.

On August 20, 2021, Hintze tested negative for COVID-19. Sealed 3-ER-271, Sealed MSJ Exhibit A. On August 30, 2021, Hintze again tested negative for COVID-19. Sealed 3-ER-272, Sealed MSJ Exhibit A. On January 5, 2022, Hintze again tested negative for COVID-19. Sealed 3-ER-222, Sealed MSJ Exhibit A.

Despite NDOC's best efforts to protect Hintze and other offenders, on January 10, 2022, Hintze tested positive for COVID-19. Sealed 3-ER-220-21, Sealed MSJ Exhibit A. Despite testing positive, Hintze suffered no physical symptoms as result of contracting COVID-19. Sealed 3-ER-220-21, Sealed MSJ Exhibit A. Hintze's medical records indicate that he had no cough, no fever, no muscle aches, no headache,

no shortness of breath and no loss of taste or smell. Sealed 3-ER-220-21, Sealed MSJ Exhibit A.

Despite have no medical evidence of any ill effects from contracting COVID-19, on September 28, 2022, Hintze submitted a complaint with the district court alleging that former NDOC Director Charles Daniels, former NDOC Deputy Director Harold Wickham, NDOC Deputy Director Brian Williams, LLC Warden Tim Garrett, LLC Associate Warden Kara LeGrand, and LLC Associate Warden Kirk Widmar, among others, violated the Eighth Amendment with respect to Hintze's conditions of confinement during the COVID-19 pandemic. 2-ER-137-61; ECF No. 7. On November 1, 2022, the district court screened the complaint and allowed Hintze to proceed with an Eighth Amendment condition and confinement claim, based on the alleged inadequate response to COVID-19 at LCC. 2-ER-163-76, ECF No. 6.

Because Defendants did not violate the Eighth Amendment and are entitled to qualified immunity, Defendants moved for summary judgment. 2-ER-51-63, ECF No. 38. After the motion was fully briefed (2-ER-20-26, 30-43; ECF Nos. 50, 52), the Magistrate Judge properly recommended that Defendants' motion be granted (1-SER-10-18, ECF No. 54). Even though Hintze never objected to the Magistrate Judge's Report & Recommendation, in an order filed October 8, 2024, the

district court reviewed the recommended grant of summary judgment de novo and denied the motion.   1-SER-2-9, ECF No. 55.

As Defendants did not violate the Eighth Amendment, much less rights that were clearly established, beyond debate, necessary to overcome Defendants entitlement to qualified immunity, Defendants timely filed a notice of appeal on November 7, 2024.  2-ER-177-79.

## V.   STANDARD OF REVIEW

A ruling on a motion for "summary judgment is reviewed *de novo*." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).  "Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when, viewing the facts in the light most favorable to the nonmoving party, (1) there is no genuine issue of material fact, and (2) the moving party is entitled to summary judgment as a matter of law." *Arpin*, 261 F.3d at 919.  In *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001), this Court explained that the "party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial."  To meet this burden when "the nonmoving party has the burden of proof at trial, the moving party need only point out [by argument] that there is an absence of evidence to support the nonmoving party's case." *Id*.; *see also Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (same). "The moving party need not disprove the other party's

10

case." *Id.* Once the moving party makes this showing, "the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076. "Only admissible evidence may be considered in deciding a motion for summary judgment." *Miller*, 454 F.3d at 987. "Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 988. "To survive a motion for summary judgment, plaintiffs must produce sufficient evidence to establish the existence of every essential element of their case on which they will bear the burden of proof at trial." *River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992). "If the nonmoving party fails to make such a showing, summary judgment will be granted because 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *In re Brazier Forest Products, Inc.*, 921 F.2d 221, 223 (9th Cir. 1990) quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## VI. SUMMARY OF ARGUMENT

Former NDOC Director Daniels, former NDOC Deputy Director Wickham, NDOC Deputy Director Williams, former LLC Warden

11

Garrett, LLC Associate Warden LeGrand, and former LLC Associate Warden Widmar are entitled to qualified immunity. They did not violate the Eighth Amendment when responding to an unprecedented COVID-19 global pandemic. Hintz failed to meet his burden of establishing, with evidence that would be admissible at trial, that each Defendant personally and knowingly disregarded an objective, substantial, intolerable risk of serious harm which proximately caused Hintze harm. While Hintze eventually tested positive for COVID-19 in January 2022, Hintze fails to identify any action taken by any Defendant in the year prior to testing positive. Hintze therefore failed to establish each Defendants' personal, individual actions caused Hintze harm, required to establish an Eighth Amendment violation.

As Hintz failed to establish a violation of the Eighth Amendment, much less establish a violation of clearly established law, beyond debate, necessary to overcome Defendants' entitlement to qualified immunity, the district court erred when denying Defendants' motion for summary judgment. This Court should therefore reverse the district court's judgment denying Defendants' motion to dismiss, and remand with instructions to grant the motion.

# VII. ARGUMENTS

## A. Defendants Are Entitled to Qualified Immunity under Established Precedent

This Court should also reverse the district court's denial of Defendants' motion for summary judgment because they are entitled to qualified immunity. In *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), the Supreme Court held "[q]ualified immunity Ruiz . . . state officials from money damages unless a plaintiff . . . show[s] (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id*. at 743. In *Reichle v. Howards*, 566 U.S. 658, 664, (2012), the Supreme Court explained to "be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." The "right allegedly violated must be established, not as a broad general proposition, but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Id*. at 665. "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 664. "This 'clearly established' standard protects the balance between vindication of constitutional rights and government officials' effective performance of

13

their duties by ensuring that officials can reasonably anticipate when their conduct may give rise to liability for damages." *Id.*

In *Carley v. Aranas*, 103 F.4th 653 (9th Cir. 2024), this Court recognized "the Supreme Court 'has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.'" *Id.* at 660–61, quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). "It is not enough that a rule be suggested by then-existing precedent." *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021). "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* "Thus, to show a violation of clearly established law, [plaintiff] must identify a case that put [each defendant] on notice that his specific conduct was unlawful." *Id.* Officers "are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela*, 584 U.S. at 104. "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* at 105. Accordingly, "existing precedent must

14

have placed the statutory or constitutional question beyond debate." *Id.* at 104.

The district court erred when denying Defendants' motion for summary judgment because Hintze failed to show a violation of a right, much less a clearly established right required to overcome qualified immunity.

## B. The District Court Erred by Considering Allegations Unsupported by Evidence that Would Be Admissible at Trial

The district court erred when denying Defendants' motion for summary judgment because the district court relied upon inadmissible evidence. For example, the district court wrongly concluded Hintze presented admissible evidence that "Defendants knew about the inadequate response to COVID-19 at LCC" because "Defendants toured LCC multiple times during 2020 and repeatedly observed the condition in the facility, also receiving calls and emails from advocacy groups informing them of the conditions at LCC," citing Hintze's complaint. 1-ER-5, ECF No. 55 at 4:12-18. In his Complaint, these allegations, however, were made based on "information and belief," and therefore are inadmissible. 2-ER-144-45; ECF No. 7 at 8-9. In *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995), this Court held that "information and belief declarations" were not evidence and "entitled to no weight because the declarant did not have personal knowledge."

15

Similarly, in *Taylor v. List*, 880 F.2d 1040, 1046 n.3 (9th Cir. 1989), this Court held "a statement to the effect that the affiant was informed and believed . . . does not raise a triable issue" because "the statement would have to be made on personal knowledge, not information and belief." The district court therefore erred when relying on inadmissible evidence based only on "information and belief."

Even if Hintze had not relied on information and belief, the allegation still could not be relied upon to oppose summary judgment. First, Hintze's allegation about what advocacy groups supposedly said in emails and calls is inadmissible hearsay, which cannot be used to oppose summary judgment. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778–79 (9th Cir. 2002) (holding deposition testimony concerning content of an "FBI Report" was "hearsay" and "inadmissible" for purposes of summary judgment); *Whittaker v. Morgan State Univ.*, 524 Fed. Appx. 58, 60, 2013 WL 2350425 (4th Cir. 2013) (holding affiant's "representations about [a] letter's content would be inadmissible hearsay" and could be used for summary judgment purposes).

Additionally, Hintze fails to provide a proper foundation which would establish that he had personal knowledge concerning his allegation about touring and receiving emails and calls. In *Intermountain Fair Housing Council v. Boise Rescue Mission Ministries*, 657 F.3d 988, 998 (9th Cir. 2011), this Court held a plaintiff failed to

16

"put forward competent evidence" necessary to oppose summary judgment when the affiant "provid[ed] no explanation for how she became aware" of the facts set forth in the affidavit, "and therefore has failed to demonstrate that [the affiant] has personal knowledge of those" facts.   This Court reasoned: "Conclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient to defeat summary judgment." *Id.*

Similarly, in *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017), this Court declared that "a witness must have 'personal knowledge of the matter' to which she testifies" in order to oppose summary judgment."   This Court held that when testimony used to oppose summary judgment "lack[s] proper foundation to testify" then the witness is "not in a position to know" and therefore the testimony is inadmissible and does not create a "genuine dispute" necessary to oppose summary judgment.   *Id.*; s*ee also Haggerty v. Fed. Ins. Co.*, 32 Fed. Appx. 845, 848, 2002 WL 463573 (9th Cir. 2002) (holding district court "properly excluded certain extrinsic evidence [declarant] proffered" used to oppose summary judgment because the "declaration . . . lack[ed] foundation in that there was no evidence [the declarant] had personal knowledge" concerning the testimony offered).

The conclusory allegations in Hintze's complaint provided no basis for the district court to conclude that he had any personal

knowledge concerning much of the allegations contained therein, including but not limited to allegations of touring facilities or receiving emails or calls from advocacy groups. The district court therefore erred when relying on these conclusory allegations to establish a material dispute of fact.

To the extent the district court found a question of material fact that Hintze's contracted COVID-19 prior January 10, 2022, the district court again erred because Hintze provided no admissible medical evidence to support this allegation. In *Kayser v. Caspari,* 16 F.3d 280, 281 (8th Cir. 1994), the Eighth Circuit held that a prisoner's "bare assertions" could not establish that he suffered from an ailment when there was no "medical evidence to support' the prisoner's claim that he suffered from this ailment." The court reasoned that the prisoner's "self-diagnosis alone cannot establish that he does, in fact, suffer from [an aliment]" when "the available medical evidence does not support his self-diagnosis." *Id.*; *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (same).

As held by the Third Circuit in *Montgomery v. Pinchak*, 294 F.3d 492, 504 (3d Cir. 2002), to prove that a prisoner contracted a serious disease such as HIV, the prisoner "would need the testimony of a medical expert" or "medical records that he might otherwise use to demonstrate his alleged" medical condition. The Court reasoned "HIV,

unlike, for example, broken legs or bullet wounds, do[es] not clearly manifest [itself] in ways that are obvious and ascertainable to a lay person" and therefore the prisoner would need admissible medical evidence. *Id*. As explained by the Tenth Circuit in *Felkins v. City of Lakewood*, 774 F.3d 647, 651 (10th Cir. 2014), a plaintiff's "lay evidence" concerning her medical condition "is inadmissible in court and thus cannot be used to oppose summary judgment" when the plaintiff "does not claim to be a medical expert." The court reasoned that "[s]uch lay evidence . . . cannot be 'based on scientific, technical, or other specialized knowledge'," as required by Fed. R. Evid. 701, and therefore is inadmissible for purposes of summary judgment. *Id*.

Hintze provided no support for his lay conclusion that he contracted COVID-19 prior to January 10, 2022. Hintze therefore could not possibly have known that he contracted COVID-19 prior to his testing positive for COVID-19. Without a positive test result for COVID-19 or other objective medical evidence, Hintze cannot establish that he contracted COVID-19 prior to January 10, 2022. *See Cox v. Benedetti*, 114 Fed. Appx. 939, 940, 2004 WL 2915113, at *1 (9th Cir. 2004) (holding that without no "medical evidence" inmate could not establish the cause for "medical condition"); *Walker v. Shansky*, 28 F.3d 666, 672 (7th Cir. 1994) (holding prisoner's "self-serving conclusions about his . . . health are insufficient to withstand the defendants'

motion for summary judgment" because there was "no evidence that [the prisoner was] qualified to testify as to his medical condition").

As the district court undisputably relied upon inadmissible evidence as the basis to deny Defendant's motion for summary judgment, this Court should reverse the district court's judgment and remand with instructions to grant Defendants' motion for summary judgment.

**C.** **Defendants Are Entitled to Qualified Immunity Because They Did _NOT_ Violate the Eighth Amendment**

The Eighth Amendment requires prison officials to provide "humane conditions of confinement" with due regard for inmate health and safety. _Farmer v. Brennan_, 511 U.S. 825, 832, 837 (1994). To show a violation, an inmate must first "objectively" establish that he was "incarcerated under conditions posing a substantial risk of serious harm." _Id._ at 834. Second, the inmate must establish that the official "was subjectively aware of the risk," but "deliberate indifferen[t] to [an] inmate['s] health or safety." _Id._ at 829, 834.

For a risk to be "objectively" "substantial" under the first prong, an inmate must show more than a risk of serious harm which is merely possible. _See Hudson v. Palmer_, 468 U.S. 517, 526 (1984). Accordingly, to show an objectively substantial risk of serious harm, the inmate must establish "a 'strong likelihood' rather than a 'mere possibility'" of harm.

20

*Williams v. Wood*, Case No. 06–55052, 223 Fed. App'x 670, 671 (9th Cir. 2007) (holding that "speculative and generalized fears of harm . . . do not rise to a sufficiently substantial risk of serious harm").

Under the second "subjective" prong, "deliberate indifference" can only be established if the prison official "knowingly and unreasonably disregard[s] an objectively intolerable risk of harm." *Farmer*, 511 U.S. at 824, 828, 837. "[D]eliberate indifference entails something more than mere negligence." *Id*. at 835. The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. A prison "official's failure to alleviate a significant risk that he should have perceived but did not" does not establish deliberate indifference. *Farmer*, 511 U.S. at 838.

Moreover, Hintze must establish that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that a plaintiff). To "be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the

21

deprivation of which the plaintiff complains." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in the original). "In order to prevail and recover damages against any of the named prison officials," Hintze "must prove (1) that the specific prison official, in acting or failing to act, was deliberately indifferent to the mandates of the eighth amendment and (2) that this indifference was the actual and proximate cause of the deprivation of the inmates' eighth amendment right to be free from cruel and unusual punishment." *Id*. at 634. When determining whether any Defendant violated the Eighth Amendment, "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which [the courts] are ill-equipped." *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir. 2003).

### D. Hintze Failed Establishing that Each Defendant Personally Violated the Eighth Amendment

Contrary to the district court's implied conclusions, Hintze cannot establish a constitutional violation against each individual Defendant based on the collective acts of NDOC because those collective acts cannot be imputed to each individual Defendant required to establish personal participation. In *Iqbal*, the Supreme Court held that because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's

own individual actions, has violated the Constitution." 556 U.S. at 676. Similarly in *Jones*, this Court held that "to be liable under [42 U.S.C. §] 1983 there must be a showing of personal participation in the alleged rights deprivation." 297 F.3d at 934; *see also OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) ("[E]ach government official, his or her title notwithstanding, is only liable for his or her own misconduct") (quoting *Iqbal*, 556 U.S. at 677); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant").

For example, in *McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996), this Court held that a plaintiff could not establish a claim for relief when Plaintiff failed to "say which wrongs were committed by which defendants." Likewise, in *Salazar v. Cnty. of Orange*, 564 Fed. Appx. 322, 2014 WL 1017070 (9th Cir. 2014), this Court held that plaintiff could not establish a claim for relief when he "impermissibly lumped together claims and defendants." *See also Reilly v. Vadlamudi*, 680 F.3d 617, 626-29 (6th Cir. 2012) (holding that a plaintiff failed to establish a "constitutional violation against each individual defendant" because "the collective acts of defendants cannot be ascribed to each individual defendant").

In its order, the district court points to no evidence, admissible at trial, which would establish that each Defendant knowingly disregarded

23

an intolerable and substantial risk of serious harm to Hintze. The only allegations concerning Director Daniels and Deputy Directors Wickham and Williams is that they supposedly toured the facility and received calls and emails from advocacy groups allegedly informing them of some unidentified conditions. 2-ER-144-45, ECF No. 7 at 8-9. As already set forth, however, district court erred when considering such allegations because they were not supported by evidence which would be admissible at trial. Even if such inadmissible evidence could be considered, Hintze does not even speculate what Director Daniels and Deputy Directors Wickham and Williams saw on these inspections, what the advocacy groups actually knew about the conditions at LCC, or what the advocacy groups informed these Defendants about the conditions at LCC. Even if Hintze had speculated Director Daniels and Deputy Directors Wickham and Williams actually knew the conditions at LCC poised an intolerable risk of serious harm, such speculation would be insufficient to establish that these Defendants violated the Eighth Amendment. *See Toguchi v. Chung*, 391 F.3d 1051, 1059 (9th Cir. 2004) (holding that "conclusion [that] was merely speculative" could not establish that a defendant "disregarded "disregarded [a] serious and known risks," because the witness "lacked any insight into [defendant's] subjective knowledge").

Hintze's allegations concerning Warden Garrett and Associate Wardens Legrand and Widmar are impermissibly speculative. Hintze alleges: "Defendants Garrat, Legrand and Widmar . . . did often not comply with the mask mandate." 2-ER-145, ECF No. 7 at 9. To establish that Defendants knowingly disregarded a substantial and intolerable risk to Hintze based on not complying with the mask mandate, Hintze would need evidence showing that Defendants knew that had contracted COVID-19, or at the very least had symptoms consistent with COVID-19, and then actually failed to wear a mask while in the vicinity and the same room as Hintze. Hintze and the district court would have this Court speculate that Defendants were in the vicinity of Hintze when not complying with the mask mandate, and then speculate that they knew they had contracted COVID-19 so as to be at risk of spreading the virus. Again, such speculation upon speculation cannot establish actual knowledge of a substantial and intolerable risk to Hintze. *Toguchi*, 391 F.3d at 1059.

Hintze's allegations concerning social distancing also do not establish an Eighth Amendment violation. Hintze alleges: "Defendants Garret, LeGrand and Widmar failed to implement social distancing policies even outside the cell." 2-ER-145-46, ECF No. 7 at 9-10. Hintze then describes conditions during chow time "once COVID-19 began." 2-ER-146, ECF No. 7 at 10-11. Hintze, however, did not dispute that

25

COVID-19 protocols at NDOC and LCC were continually updated and implemented, including protocols and procedures designed to prevent the spread of COVID-19 during chow time. 2-ER-69-75, 120-22; ECF Nos. 38-2 & 38-6. Hintze fails to allege any other actions Warden Garret, and Associate Wardens LeGrand and Widmar could have taken to prevent the spread of COVID-19, in light of space restraints inherent with confinement in a correctional center.

In *Peralta v. Dillard*, 744 F.3d 1076, 1083-84, 1086-88 (9th Cir. 2014), this Court held, *en banc*, that prison officials could not be held liable for constitutional violation when they had "no control" over the requested resources and therefore the relief requested was "impossible to provide." *Id*. at 1083-84, 1086-88. This Court concluded that a court cannot impute wrongdoing "to an employee who himself has committed no wrong." *Id*. at 1084.

Hintze fails to provide any evidence that Warden Garret, Associate Wardens LeGrand and Widmar had any ability to provide social distancing other than that provided by NDOC and LCC policies and procedures. The district court therefore erred in inputting wronging on the part of Defendants based on constraints over which they had no control.

As Hintze failed to offer any evidence admissible at trial establishing that any Defendant, through each Defendant's own

26

personal actions, knowingly disregarded an objective, substantial, and intolerable risk of serious harm to Hintze, the district court erred when denying Defendants' motion for summary judgment.

### E. Hintze's Conditions of Confinement During the COVID-19 Pandemic Did _NOT_ Violate the Eighth Amendment

Even if the collective acts of NDOC could be imputed personally to each individual Defendant, Hintze's conditions of confinement during the COVID-19 pandemic did not violate the Eighth Amendment. Rather than deliberately indifference, the established facts demonstrate that NDOC and LCC appropriately responded to the COVID-19 pandemic. In _Fraihat v. U.S. Immigration & Customs Enf't_, 16 F.4th 613, 618-19, 637 (9th Cir. 2021), the Ninth Circuit held that immigration detainees failed to show that immigration officials, when "responding to the evolving and unprecedented COVID-19 pandemic," "acted with 'deliberate indifference' to medical needs or in 'reckless disregard" of health risks," when the immigration officials "took steps to address COVID-19," even though the "response to the COVID-19 pandemic may have been imperfect, even at times inadequate." The Court reasoned there "is considerable distance between imperfect implementation of a policy, or even knowledge of the imperfect implementation of a policy, and deliberate indifference in the constitutional sense." _Id._ at 647. This Court concluded that even

27

though immigration officials "might have approached the pandemic more effectively," immigration detainees did not show immigration officials' actions "reflected deliberate indifference or reckless disregard of COVID-19" because courts must give "due consideration for the Executive Branch's preeminent role in managing immigration detention facilities and its greater institutional competence in this area," "[p]articularly in the face of scientific uncertainty about COVID-19." *Id.* at 638-42*; see also Valentine v. Collier*, 978 F.3d 154, 164-65 (5th Cir. 2020) (holding that prison officials did not violate the Eighth Amendment when responding to COVID-19 because they took "affirmative steps . . . to contain the virus, even though "the district court identified lapses in [prison officials'] response to COVID-19" and the "measures [taken] may have been unsuccessful" because "the Eighth Amendment does not mandate perfect implementation," "especially in the face of an unprecedented public health crisis"); *Swain v. Junior*, 961 F.3d 1276, 1288-91 (11th Cir. 2020) (holding prison officials did not violate the Eighth Amendment when responding to COVID-19, even though they "didn't succeed in preventing the virus," when the "district court never found that "defendants knew of any potential lapses in enforcement and deliberately ignored them," but instead found that prison officials "implement[ed] some social-distancing measures, distribut[ed] face masks, screen[ed] inmates and

28

staff, and provid[ed] cleaning and personal hygiene supplies," as prison officials were "faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility").

Here, NDOC and LCC implemented the policies adopted by NDOC's medical director for combating COVID-19. 2-ER-69-75, 120-22; ECF Nos. 38-2 & 38-6. Even though those policies may not have prevented Hintze from contracting COVID-19, that does not establish a violation of the Eighth Amendment. Due to these policies, NDOC had the 8th lowest positive COVID-19 infection rate of offenders in the nation. 2-ER-77-78, ECF No. 38-3 at 2-3. These policies successfully prevented Hintze from contracting COVID-19 until January 10, 2022 (Sealed 3-ER-220-21, Sealed MSJ Exhibit A), after Hintze received the COVID-19 vaccine (Sealed 3-ER-270, Sealed MSJ Exhibit A). Because Hintze received the COVID-19 vaccine before contracting COVID-19, he suffered no physical symptoms as result of contracting COVID-19, including no cough, no fever, no muscle aches, no headache, no shortness of breath and no loss of taste or smell. Sealed 3-ER-220-21, Sealed MSJ Exhibit A. Even though NDOC might have approached the pandemic more effectively and even if the response to the COVID-19 pandemic may have been imperfect, NDOC's response can hardly be described as "deliberate indifference" or a "reckless disregard" for the risks to Hintze's health. This district court erred because if failed to

afford NDOC wide latitude in responding to the unprecedented and ever evolving nature of the COVID-19 pandemic and failed to recognize that NDOC's response effectively protected Hintze from suffering any adverse health effects upon contracting COVID-19.

Accordingly, this Court should reverse the district court's denial of Defendants' motion for summary judgment, and remand with instructions to grant the motion.

### F. Hintze Failed to Establish that Any Supposed Shortcomings When Implementing NDOC's COVID-19 Protocols Caused Hintz to Contract COVID-19

Hintz did not attempt to establish that he contracted COVID-19 because of the supposed shortcomings when implementing NDOC COVID-19 protocols. As mandated by *Leer*, Hintze must establish the "requisite causal connection between each individual prison official's actions and the eighth amendment violation." 844 F.2d at 634. The district court erred when denying Defendants' motion for "summary judgment because [Hintze had] failed to allege facts which demonstrate that any particular prison official was the actual and proximate cause of any constitutional violation." *Id*.

In *Campbell v. California Dept. of Corr. & Rehab.*, 463 Fed. Appx. 634, 635–36, 2011 WL 6425312, at *1 (9th Cir. 2011), this Court held that "[s]ummary judgment on [a prisoner's] deliberate indifference claim was proper with respect to each defendant" because the prisoner

30

"failed to present sufficient evidence of causation between the alleged violations and any food-borne illness." This Court reached this result because the prisoner failed to meet the "causation requirement" of "both causation-in-fact and proximate causation." *Bearchild v. Cobban*, 947 F.3d 1130, 1150 (9th Cir. 2020).

Similarly, in *Panchev v. Pac. Gas & Elec. Co.*, 825 Fed. Appx. 462, 463, 2020 WL 5511817 (9th Cir. 2020), this Court held the "district court properly granted summary judgment" because the plaintiff, asserting a § 1983 claim, failed to establish that "plaintiff's alleged injuries resulted from his exposure to elevated levels of arsenic or uranium." The Court reasoned that in "a § 1983 action, the plaintiff must demonstrate that the defendant's conduct was the actionable cause of the claimed injury," which requires establishing "specific causation, whether a particular individual suffers from a particular ailment as a result of exposure to a substance." *Id.*

Here, Hintze failed to point to any evidence in the record establishing that the action of any particular Defendant was the actual and proximate cause of his contracting COVID-19. According to Hintz, the conditions he supposedly describes "occurred: March – December of 2020." 2-ER-142, ECF No. 7 at 6. Hintze, however, did not contract COVID-19 until January 10, 2022, more than a full year later. Sealed 3-ER-220-21, Sealed MSJ Exhibit A. Conditions supposedly present

31

December 2020 cannot be the cause-in-fact or proximate cause for Hintze's testing positive for COVID-19 on January 10, 2022. As Hintze failed to establish that any individual Defendant was personally the actual and proximate cause of his contracting COVID-19, the district court erred when denying Defendants' motion for summary judgment. This Court should therefore reverse the district court's judgment, and remand with instructions to grant Defendants' motion.

### G. Hintze Cannot Establish an Eighth Amendment Violation Because He Failed to Establish that His Health Was Harmed

Even if Hintze could establish deliberate indifference, he cannot establish the required harm. S*ee Shapley,* 766 F.2d at 407 (holding that inmate could not establish a "claim of deliberate medical indifference" unless "the denial [of medical care] was harmful"). To prove an Eighth Amendment violation, Klein must establish that Defendants' actions "caused" further harm. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012).

In *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994), this Court held that prison official did not violate the Eighth Amendment based on a prisoner contracting a "bladder infections" when the prisoner "did not offer evidence" that prison officials' actions "caused any harm." While Hintze contracted COVID-19, the objective medical evidence establishes that he suffered no harm, including no cough, no fever, no muscle aches,

no headache, no shortness of breath and no loss of taste or smell. Sealed 3-ER-220-21, Sealed MSJ Exhibit A. Because the medical evidence establishes that Hintze suffered no substantial or serious harm, the district court erred when denying Defendants' motion for summary judgment. *See Arpin*, 261 F.3d at 922 (holding that plaintiff failed to establish a constitutional violation when the plaintiff did "not provide any medical records to support her claim"). This Court should therefore reverse the district court, and remand with instructions to grant Defendants' motion.

### H. Hintze Failed to Meet His Burden of Establishing a Violation of Clearly Established Law, Beyond Debate, Required to Overcome Qualified Immunity

Neither Hintze, nor the district court, has cited any Supreme Court or circuit authority which squarely governs the facts of this case and would, beyond debate, clearly establish that Defendants violated the Eighth Amendment. In *Carley*, this Court held the "burden of proof rests" with the Klein to prove both that "the officials conduct violated a constitutional right," and that the "violation was clearly established at the time of the violation." 103 F.4th at 659-60. In *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), this Court held that resolving dispositive motions "based on qualified immunity" requires conducting an "individualized analysis . . . , examining each of the . . . elements of the alleged" cause of action, when determining whether the

law was clearly established. Hintz, however, cannot point to any binding precedent establishing that he meets each elements required to establish an Eighth Amendment violation.

Hintze and the district court almost entirely rely upon *Hampton v. California*, 83 F.4th 754 (9th Cir. 2024) to establish a violation of clearly established law. 1-ER-, ECF No. 55 at 7; 2-SER-, ECF NO. 50 at 7-8. In *Hampton*, prison officials made the affirmative decision to transfer prisoners to another prison, even though they were aware that the transfer would result in a high possibility of spreading COVID-19. *Id.* at 767-68. For that reason, this Court held "reasonable prison officials would have been on notice in 2020 that they could be held liable for exposing inmates to a serious disease, including a serious communicable disease." *Id* at 70.

Here, Hintz offers no evidence admissible at trial establishing that any Defendant sought to transfer any inmate, much less knowing that such action would have a high probability to spreading COVID-19. To the contrary, as previously set forth, Hintze has failed to offer any evidence establishing that any Defendant took any action which would have resulted in Hintze contracting COVID-19 in January of 2022, much less that any Defendant actually knew that his or her actions posed an objective, substantial, intolerable risk of serious harm. Just as in *Fraihat*, NDOC took steps to address COVID-19, and even though

34

Defendants' response may not have been perfect, Hintze has failed to establish that any Defendant personally and actually knew that their actions, when responding to the COVID-19 pandemic, were deliberate indifference or in reckless disregard of COVID-19. 16 F.4th at 618-42. More importantly, Hintze cannot establish that any Defendant personally and knowingly disregarded the risk of COVID-19 to Hintze, as he fails to identify any actions taken by Defendants within the year before Hintze contracted COVID-19. Hintze simply lacks any evidence that Defendants' personal actions caused Hintze to contract COVID-19.

Hintze therefore cannot establish a constitutional violation, much less meet his burden of showing a violation that was clearly established, beyond debate. *See Carley*, 103 F.4th at 659-60 (holding the "burden of proof rests" with the [inmate] to prove a both that "the officials conduct violated a constitutional right," and that the "violation was clearly established at the time of the violation"). Accordingly, Defendants are shielded by qualified immunity, and the district court erred when denying their motion for summary judgment. This Court should therefore reverse the district court's judgment, and remand with instructions to grant Defendants' motion because they are shielded by qualified immunity.

## VIII. CONCLUSION

For the foregoing reasons, this Court should reverse the district court's judgment denying Defendants' motion for summary judgment, and remand with instruction to the district court to grant Defendants' motion for summary judgment in all respects.

Respectfully submitted July 8, 2025,

AARON D. FORD
Attorney General

By: */s/ Chris Davis*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General

*Attorneys for the Defendants-Appellants*

## STATEMENT OF RELATED CASES

The undersigned attorney asserts that I am unaware of any related cases pending in the Ninth Circuit Court of Appeals.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and 9th Cir. R. 32-1, the attached brief is proportionately spaced, has a typeface of 14 points or more and contains 7742 words.

Respectfully submitted July 8, 2025,


AARON D. FORD
Attorney General

By:   /s/ *Chris Davis*
Chris Davis (Bar No. 6616)
Senior Deputy Attorney General
*Attorneys for Defendants-Appellants*

37

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS'-APPELLANTS OPENING BRIEF** and **DEFENDANTS – APPELLANTS' EXCERPTS OF RECORD VOLUME I & II** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate electronic filing system on July 8, 2025.

Participants in the case who are registered users will be served by the appellate electronic filing system.

I hereby certify that I served **DEFENDANTS-APPELLANTS' MOTION TO SEAL** and **UNDER SEAL VOLUME III OF DEFENDANTS-APPELLANTS' EXCERPTS OF RECORD** by email on July 8, 2025, as follows

Cesar Lopez-Morales, Esq.
ORRICK, HERRINGTON & SUTCLIFFE, LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
clopez-morales@orrick.com

Samuel Weiss, Esq.
RIGHTS BEHIND BARS
416 Florida Avenue NW, #26152
Washington, D.C. 20001-05069
sam@rightsbehindbars.org

*Attorneys for Plaintiff-Appellee*

*/s/ Kimalee Goldstein*
An employee of the office
of the Nevada Attorney General

38