No. 24-6806

IN THE
# United States Court of Appeals for the Ninth Circuit

JASON HINTZE,

*Plaintiff-Appellee,*

*v.*

CHARLES DANIELS, Director, NDOC; TIM GARRETT, Warden, LCC; KARA LEGRAND, Associate Warden of Programming, LCC; KIRK WIDMAR, Associate Warden of Operations, LCC; BRIAN WILLIAMS SR., Deputy Director of Programs, NDOC; HAROLD WICKHAM, Deputy Director of Operations, NDOC,

*Defendants-Appellants,*

and

STEVE SISOLAK, Governor/Board of Prison Commissioner; BARBARA CEGAVSKE, Secretary of State/Board of Prison Commissioner; AARON D. FORD, Attorney General/Board of Prison Commissioner; MICHAEL MINEV, Medical Director, NDOC; DR. DOCTOR IHAN AZZAM, Medical Officer, Dept. of Health and Human Services, Division of Public and Behavioral Health; PERRY RUSSELL, Warden, WSCC,

*Defendants.*

On Appeal from the United States District Court
for the District of Nevada
No. 3:22-cv-00436-MMD-CLB, Hon. Miranda M. Du

## RESPONSE BRIEF FOR
## PLAINTIFF-APPELLEE JASON HINTZE

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street, NW
Front 1, No. 33821
Washington, DC 20033

Cesar Lopez-Morales
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 339-8400

*Additional Counsel Listed on Inside Cover*

Christopher J. Cariello
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019

*Counsel for Plaintiff-Appellee*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................iii

INTRODUCTION.................................................................................1

JURISDICTIONAL STATEMENT .......................................................4

STATEMENT OF THE ISSUES...........................................................5

STATEMENT OF THE CASE ..............................................................5

    Defendants disregarded the prison's COVID-19 protocols,
    and Mr. Hintze contracted the virus twice,
    experiencing long-term harms ................................................6

    Acting pro se, Mr. Hintze sues Defendants for violating his
    Eighth Amendment rights ...................................................11

    Defendants move for summary judgment, and the district
    court denies the motion because there are disputes of
    material fact ........................................................................12

SUMMARY OF ARGUMENT ............................................................14

STANDARD OF REVIEW...................................................................17

ARGUMENT ......................................................................................18

    I.    This Court Lacks Interlocutory Jurisdiction Because
            Defendants' Appeal Turns On The District Court's
            Determination That There Are Genuine Disputes Of
            Material Fact Precluding Summary Judgment. ..................18

         A.    There is no interlocutory jurisdiction because
                Defendants' appeal turns on whether the district
                court erred in concluding that triable issues of fact
                exist. ...........................................................................19

         B.    Defendants ignore this Court's limited jurisdiction
                and fail to show that their appeal can be heard..........26

    II.    The District Court Did Not Err In Denying Defendants'
            Motion For Summary Judgment. ........................................29

i

A.  A reasonable trier of fact could find that
    Defendants violated Mr. Hintze's constitutional
    right to be free from exposure to a serious illness. ..... 30

B.  Defendants are not entitled to qualified immunity
    at summary judgment because the right to be free
    from exposure to a serious illness was clearly
    established................................................................... 40

C.  Defendants' remaining arguments, if reviewable,
    are forfeited and meritless.......................................... 45

CONCLUSION ........................................................................ 50

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Ctr. For Env't v. U.S. Forest Serv.*,
  189 F.3d 851 (9th Cir. 1999)............................................................ 28

*Estate of Anderson v. Marsh*,
  985 F.3d 726 (9th Cir. 2021).............................. 4, 17, 18, 19, 21, 25, 28

*Ballou v. McElvain*,
  29 F.4th 413 (9th Cir. 2022) ........................................................ 30, 42

*Bank Melli Iran v. Pahlavi*,
  58 F.3d 1406 (9th Cir. 1995)............................................................ 26

*Bao Xuyen Le v. Molina*,
  810 F. App'x 550 (9th Cir. 2020)...................................................... 25

*Baxter v. Bracey*,
  140 S. Ct. 1862 (2020)...................................................................... 44

*Benavidez v. County of San Diego*,
  993 F.3d 1134 (9th Cir. 2021) .......................................................... 40

*Bridges v. Morgan*,
  No. 21-12425, 2022 WL 342905 (11th Cir. Feb. 4, 2022) .................. 22

*Castro v. County of Los Angeles*,
  833 F.3d 1060 (9th Cir. 2016) .......................................................... 43

*Cox v. Benedetti*,
  114 F. App'x 939 (9th Cir. 2004)...................................................... 26

*Ellis v. Salt Lake City Corp.*,
  147 F.4th 1206 (10th Cir. 2025) .................................................. 21, 28

*Ellis v. Washington County*,
  198 F.3d 225 (6th Cir. 1999)............................................................ 22

*Farmer v. Brennan*,
511 U.S. 825 (1994) .................................................... 11, 30, 33, 34, 37

*Felkins v. City of Lakewood*,
774 F.3d 647 (10th Cir. 2014) ......................................................... 26

*Fireguard Sprinkler Sys., Inc. v. Scottsdale Ins. Co.*,
864 F.2d 648 (9th Cir. 1988) ........................................................... 46

*Gee v. Pacheco*,
627 F.3d 1178 (10th Cir. 2010) ....................................................... 26

*George v. Morris*,
736 F.3d 829 (9th Cir. 2013) ................................................... 4, 25, 49

*Gribben v. United Parcels Serv., Inc.*,
528 F.3d 1166 (9th Cir. 2008) ......................................................... 28

*Haggerty v. Fed. Ins. Co.*,
32 F. App'x 845 (9th Cir. 2002) ....................................................... 26

*Hampton v. California*,
83 F.4th 754 (9th Cir. 2023) ................................ 30, 32, 41, 42, 43, 44

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ........................................................................ 40

*Harper v. City of Los Angeles*,
533 F.3d 1010 (9th Cir. 2008) ......................................................... 46

*Helling v. McKinney*,
509 U.S. 25 (1993) .................................................................... 37, 41

*Hudson v. Palmer*,
468 U.S. 517 (1984) ........................................................................ 31

*Intermountain Fair Hous. Council v. Boise Rescue Mission Ministries*,
657 F.3d 988 (9th Cir. 2011) ........................................................... 26

*Johnson v. Jones*,
515 U.S. 304 (1995) ........................................................................ 27

iv

*Jones v. Blanas,*
    393 F.3d 918 (9th Cir. 2004) ..................................................... 18, 47

*Kayser v. Caspari,*
    16 F.3d 280 (8th Cir. 1994) .............................................................. 27

*Kisela v. Hughes,*
    584 U.S. 100 (2018) ......................................................................... 41

*Locke v. Haessig,*
    788 F.3d 662 (7th Cir. 2015) ........................................................... 22

*Lowry v. City of San Diego,*
    858 F.3d 1248 (9th Cir. 2017) ......................................................... 26

*McKinney v. City of Middletown,*
    49 F.4th 730 (2d Cir. 2022) ............................................................. 44

*Montgomery v. Pinchak,*
    294 F.3d 492 (3d Cir. 2002) ............................................................ 26

*Munoz v. Curtis,*
    47 F. App'x 501 (9th Cir. 2002) .................................. 5, 21, 22, 23, 29

*Nazario v. Thibeault,*
    No. 22-1657, 2023 WL 7147386 (2d Cir. Oct. 31, 2023) ..................... 43

*Orn v. City of Tacoma,*
    949 F.3d 1167 (9th Cir. 2020) ......................................................... 19

*Orr v. Bank of Am., NT & SA,*
    285 F.3d 764 (9th Cir. 2002) ........................................................... 26

*Ortiz v. Vizcarra,*
    773 F. App'x 450 (9th Cir. 2019) ..................................................... 25

*Pauluk v. Savage,*
    836 F.3d 1117 (9th Cir. 2016) ..................................................... 18, 23

*Peck v. Montoya,*
    51 F.4th 877 (9th Cir. 2022) ....................................................... 18, 29

*Rhodes v. Chapman*,
452 U.S. 337 (1981) .................................................................. 40

*Sandoval v. County of San Diego*,
985 F.3d 657 (9th Cir. 2021) ................................................... 46

*Scott v. Harris*,
550 U.S. 372 (2007) ............................................................ 28, 49

*Skillsky v. Lucky Stores, Inc.*,
893 F.2d 1088 (9th Cir. 1990) ........................................... 46, 47

*Sosa v. Martin County*,
57 F.4th 1297 (11th Cir. 2023) ................................................ 44

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .................................................. 31

*Taylor v. List*,
880 F.2d 1040 (9th Cir. 1989) ........................................... 26, 31

*Thomas v. Gomez*,
143 F.3d 1246 (9th Cir. 1998) .................................................. 25

*Thomas v. Ponder*,
611 F.3d 1144 (9th Cir. 2010) ........................... 17, 30, 33, 48

*Voskanyan v. Upchurch*,
No. 21-55333, 2022 WL 4181664 (9th Cir. Sept. 13, 2022).... 21, 24, 25

*Walker v. Shansky*,
28 F.3d 666 (7th Cir. 1994) ..................................................... 26

*Wallis v. Baldwin*,
70 F.3d 1074 (9th Cir. 1995) .................................................... 38

*Whitlock v. Brueggemann*,
682 F.3d 567 (7th Cir. 2012) ................................................... 22

*Whittaker v. Morgan State Univ.*,
524 F. App'x 58 (4th Cir. 2013) ............................................... 26

*Wilkins v. City of Oakland,*
   350 F.3d 949 (9th Cir. 2003)................................................. 19

*Williams v. Wood,*
   223 F. App'x 670 (9th Cir. 2007)........................................ 31

*Ziglar v. Abbasi,*
   582 U.S. 120 (2017)............................................................ 43

## Statutes

28 U.S.C. § 1331 ................................................................... 4

42 U.S.C. § 1983 ................................................................. 11

## Rules and Regulations

Fed. R. Civ. P. 56(e)......................................................... 46

## INTRODUCTION

With the benefit of time, one might easily forget what life was like just five years ago during the height of the COVID-19 pandemic. There was no vaccine. COVID-19 was among the leading causes of death in the United States. Multitudes became gravely ill. And many suffered (and still do) from severe, life-altering symptoms after contracting the virus. The situation was especially dire in our Nation's prisons. Given their crowded and restrictive nature, prisons became high-risk environments for prisoners and staff alike. Federal and state governments developed guidelines and protocols to slow the spread of the virus, adopting strict masking and social distancing mandates. Naturally, COVID-19 cases continued to happen across these facilities. These COVID cases were often inevitable; sometimes, prison officials and prisoners were just careless. On occasion, though, prison officials recklessly disregarded pervasive protocol violations, contributing to unsafe prison conditions and outbreaks. This is one of those cases.

According to Jason Hintze, a prisoner under the custody of the Nevada Department of Corrections, correctional officers in his prison repeatedly failed to wear masks and declined to require prisoners to do

so; failed to enforce social distancing among prisoners; would stand close to Mr. Hintze and intentionally cough in his direction; and would tell him that they wanted the prisoner population to get sick. On one occasion, correctional officers from another prison that had recently experienced a COVID outbreak were assigned to search Mr. Hintze's cell and did so without wearing masks or gloves. Unsurprisingly, Mr. Hintze contracted the virus (twice), and has experienced various long-COVID symptoms, such as brain fog, respiratory issues, and a deteriorated sense of taste and smell. So, he sued six prison officials—three from the Department of Corrections and three from his prison facility—who knew of and disregarded these pervasive violations of the prison protocols. Mr. Hintze has argued that this deliberate indifference from Defendants violated his Eighth Amendment rights.

Defendants have contested these facts, claiming that Mr. Hintze contracted the virus only once, and that the relevant protocols were always followed, by everyone, at all times. If anything, Defendants claim, a less-than-perfect response to the pandemic is just that, and not a constitutional violation. But deciding who is right about what happened and whether Mr. Hintze could prove his version of the facts is

2

a question for the jury alone to decide. That is what the district court correctly concluded, denying Defendants' motion for summary judgment because there were genuine disputes of material fact.

But rather than wait for a jury to hear the testimony and find the facts, Defendants rushed to appeal the district court's denial. This kind of appeal necessarily triggers this Court's circumscribed interlocutory jurisdiction, which permits review *only* of a legal argument that, under the plaintiff's version of the events, there is no violation of a clearly established right. Fact-related disputes about the pretrial record, even if legal in nature, are categorically off-limits in this appellate posture.

Defendants ignore these important limitations on the Court's interlocutory jurisdiction. Not only do they challenge the district court's determination that there are genuine factual disputes precluding summary judgment, but they also argue that, under *their* version of the facts, they prevail as a matter of law. These arguments are unreviewable at this stage. And even if they could be reviewed, the district court correctly found that a reasonable factfinder may side with Mr. Hintze on the merits of his claim.

3

This Court should dismiss the appeal for lack of jurisdiction or, in the alternative, affirm the denial of summary judgment.

## JURISDICTIONAL STATEMENT

Jurisdiction in the district court was proper pursuant to 28 U.S.C. § 1331. The general rule is that denials of summary judgment are typically not appealable because there is no final judgment in the case. *Estate of Anderson v. Marsh*, 985 F.3d 726, 730-31 (9th Cir. 2021). There is a narrow exception to that rule when a court denies summary judgment on an official's assertion of qualified immunity. *See id.* In such circumstances, this Court can review the order of denial, but the scope of its review is "circumscribed." *Id.* at 730.

"[I]nterlocutory review jurisdiction is limited to resolving a defendant's purely legal contention that his or her conduct did not violate the Constitution and, in any event, did not violate clearly established law." *Id.* at 731 (citation modified). "Any decision by the district court that the parties' evidence presents genuine issues of material fact is categorically unreviewable on interlocutory appeal." *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013) (quotation marks omitted). That means, for example, that this Court will not evaluate

4

the admissibility of evidence supporting the parties' versions of the facts in this interlocutory posture. *Munoz v. Curtis*, 47 F. App'x 501, 502 (9th Cir. 2002). For the reasons set forth below, *see* § I, Defendants' appeal should be dismissed for lack of appellate jurisdiction.

## STATEMENT OF THE ISSUES

The district court denied Defendants' motion for summary judgment after concluding that there are genuine disputes of material fact underlying Defendants' assertion of qualified immunity. On appeal, Defendants challenge the existence of such factual disputes and argue that they are entitled to summary judgment under their version of events.

I. Does this Court have interlocutory jurisdiction over Defendants' appeal?

II. If this Court has jurisdiction, did the district court correctly conclude that there are genuine disputes of material fact precluding summary judgment in Defendants' favor?

## STATEMENT OF THE CASE

Mr. Hintze is a prisoner in the custody of the Nevada Department of Corrections (NDOC), who is housed at Lovelock Correctional Center.

2-ER-137. Acting pro se, he sued various prison officials for being deliberately indifferent to unsafe prison conditions during the height of the COVID-19 pandemic in violation of the Eighth Amendment. 2-ER-137-61. The six defendants can be grouped into two categories: (1) the *NDOC Defendants*, then-Director Charles Daniels, then-Deputy Director of Operations Harold Wickham, and then-Deputy Director of Programs Brian Williams; and (2) the *Lovelock Defendants*, Warden Tim Garrett, Associate Warden of Programming Kara LeGrand, and Associate Warden of Operations Kirk Widmar. 2-ER-138-40, 175.

### *Defendants disregarded the prison's COVID-19 protocols, and Mr. Hintze contracted the virus twice, experiencing long-term harms*

NDOC established various COVID-19 protocols for staff and prisoners, which it updated as the pandemic progressed. 2-ER-68-75 (MSJ Ex. C, NDOC COVID-19 Updates). These protocols specified varying requirements for things like testing, isolation, and personal protective equipment. *See id.*; *see also* 2-ER-79-114 (MSJ Ex. E, CDC Guidelines for Prisons). Since the beginning of the pandemic in March 2020, NDOC required all staff and prisoners to "wear face masks … while maintaining social distancing of at least 6 feet from others";

6

encouraged them to frequently wash their hands; and instructed that all surfaces be cleaned. 2-ER-70-71, 74 (NDOC COVID-19 Updates); *see* 2-ER-70 (specifying that everyone needed "to wear an N95 mask at all times").

There were only two exceptions to the "mask requirement." 2-ER-70-71. The first exception was when drinking and eating, "while maintaining social distancing of at least 6 feet from others." 2-ER-71. The second was if the staff member's "workspace is an enclosed office (meaning you are the only who occupies the office) with a door." *Id.* Supervisors were required to ensure that "all NDOC employees and contractors always" complied with the mask and social distancing mandates "while on NDOC property." *Id.*

In 2020 and 2021, these protocols were disregarded in Lovelock Correctional Center. The failures were flagrant and pervasive. Correctional officers "often refused to wear masks" during this time and "failed to … requir[e] inmates" to do the same. 2-ER-144 (Compl.); *see* 2-ER-31-32 (Hintze MSJ Opp. Statement of Disputed Facts ("SODF") ¶¶4-5); 2-ER-42 (Hintze Decl. ¶¶4-5). On several occasions, when Mr. Hintze asked correctional officers why they were not wearing masks,

7

these officers would respond by standing "very close" to Mr. Hintze and other prisoners and "intentionally cough[ing] in [their] direction." 2-ER-144 (Compl.). And when Mr. Hintze complained to the officers about their repeated failure to wear masks, the officers would respond that "they wanted the inmate population to get COVID-19." 2-ER-145 (Compl.).

Correctional officers also failed to enforce the social distancing mandate. 2-ER-42 (Hintze Decl. ¶¶4-5), 143-47 (Compl.); *see* 2-ER-32 (SODF ¶5). Prisoners were forced to eat in a crowded prison cafeteria (or "chow hall"), which consisted of approximately 40 tables that were two feet away from each other. 2-ER-146 (Compl.); *see* 2-ER-42 (Hintze Decl. ¶¶4-5). And, just as they did before the COVID-19 pandemic began, prisoners would stand "shoulder-to-shoulder," often "physically touching," when walking to the chow hall and waiting in line to get their meal trays. 2-ER-146 (Compl.).

Defendants knew of and ignored these violations. 2-ER-31-32 (SODF ¶¶4-6), 42 (Hintze Decl. ¶4); 144-46 (Compl.). Between March and December 2020, the NDOC Defendants (Daniels, Wickham, and Williams) toured Lovelock Correctional Center "several times,"

8

observing correctional officers and prisoners not wearing masks and prisoners eating in crowded chow halls. 2-ER-31 (SODF ¶4), 42 (Hintze Decl. ¶4); *see* 2-ER-144-45 (Compl.). The NDOC Defendants also saw officers "cough[ing] in the direction of inmates." 2-ER-31 (SODF ¶4); *see* 2-ER-144 (Compl.). In addition to the tours, the NDOC Defendants received "calls and emails from various advocacy groups" alerting them to these unsafe prison conditions at Lovelock Correctional Center. 2-ER-31 (SODF ¶4), 145 (Compl.).

Meanwhile, the Lovelock Defendants (Garrett, LeGrand, and Widmar) failed to wear masks themselves, and also saw correctional officers "not complying with the mask [and social distancing] mandate[s]." 2-ER-32 (SODF ¶5); *see* 2-ER-42 (Hintze Decl. ¶5), 145-47 (Compl.). Just like their bosses at NDOC, these Lovelock officials did nothing to address these unsafe conditions. 2-ER-31-32 (SODF ¶¶4-6), 42 (Hintze Decl. ¶5), 144-46 (Compl.). Mr. Hintze told the Lovelock Defendants that these were dangerous violations; they ignored him. 2-ER-146 (Compl.).

During the first week of November 2020, the Lovelock Defendants approved a plan to bring correctional officers from a different prison

9

(Warm Springs Correctional Center) to search several housing units at Lovelock. 2-ER-151-53 (Compl.). The correctional officers from Warm Springs—which "had just experienced a COVID-19 outbreak"—conducted a three-day exhaustive search of each cell without wearing gloves or masks. 2-ER-151-52. These officers touched everything in Mr. Hintze's cell and strip-searched him. 2-ER-152. Following the searches, in mid-November, the Lovelock Defendants instructed the staff to reassign Mr. Hintze and other prisoners to new cells and housing units. 2-ER-152-53.

"Shortly after the search and transfers," in early December 2020, Mr. Hintze contracted the COVID-19 virus for the first time, alongside "several hundred other inmates," 2-ER-152, including "many, if not most, inmates in [his housing unit]," 2-ER-43 (Hintze Decl. ¶7); *see* 2-ER-32-33 (SODF ¶¶7, 12-13); 2-ER-143, 150 (Compl.). On December 8, 2020, Mr. Hintze was so ill that, while walking in the housing unit, he "blacked out and fainted," hitting his face on the concrete floor. 2-ER-150 (Compl.); *see* 2-ER-43 (Hintze Decl. ¶8). He "remained unconscious for several moments." 2-ER-43 (Hintze Decl. ¶8).

In August 2021, Mr. Hintze received his COVID-19 vaccine. ER-270. But the violations continued, 2-ER-42-43 (Hintze Decl. ¶6), 157-160 (Compl.), and in January 2022, Mr. Hintze contracted COVID-19 a second time, 2-ER-32 (SODF ¶7); *see* 2-ER-141, 158-60 (Compl.); 3-ER-220-21 (Lab Testing Result). To this day, Mr. Hintze suffers from various long-COVID symptoms, such as brain fog and impaired cognitive abilities, headaches, severe joint pain, respiratory issues, and a deteriorated sense of taste and smell. 2-ER-43 (Hintze Decl. ¶9); *see* 2-ER-153, 155, 160 (Compl.).

### *Acting pro se, Mr. Hintze sues Defendants for violating his Eighth Amendment rights*

Mr. Hintze, proceeding pro se, sued Defendants under 42 U.S.C. § 1983, asserting a conditions of confinement claim under the Eighth Amendment. 2-ER-137-161 (Compl.). To state that claim, Mr. Hintze needed to establish that he was exposed to a "substantial risk of serious harm" and that prison officials acted with "deliberate indifference" towards that risk. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

As required under the Prison Litigation Reform Act, the district court screened the verified complaint, which Mr. Hintze filed under oath and penalty of perjury. 2-ER-162-176 (Screening Order). The

11

court held that Mr. Hintze alleged sufficient facts to state a claim. 2-ER-167-69, 175-76. Among other things, the court concluded that Mr. Hintze sufficiently alleged that Defendants' conduct contributed to the unsafe prison conditions that led to Mr. Hintze contracting COVID-19 twice and suffering significant and ongoing harms. 2-ER-168-69, 175.

### *Defendants move for summary judgment, and the district court denies the motion because there are disputes of material fact*

Defendants moved for summary judgment, arguing that (1) they did not violate Mr. Hintze's Eighth Amendment rights or, in the alternative, (2) they are entitled to qualified immunity because they did not violate a clearly established right. 2-ER-51-62.

Though the magistrate judge recommended granting Defendant's motion for summary judgment, 1-ER-10-18, the district court rejected the recommendation and denied the motion, 1-ER-2-9; *see* 1-ER-4 n.4. As to the merits of the conditions of confinement claim, the court held that, given Mr. Hintze's declaration and well-pleaded allegations in his verified complaint, there were disputed issues of fact as to whether Defendants "deliberately declined to enforce minimum precautions, including the [COVID-19] precautions NDOC itself touted." 1-ER-7; *see* 1-ER-3-7. The court explained that parties' supporting declarations—

12

one from Associate Warden Daniel Collier and another from Mr. Hintze himself, "each signed under penalty of perjury"—contained "conflicting statements" that go to the core of Mr. Hintze's claim and the "central issue" in the case. 1-ER-6-7.

For example, the court pointed out how, according to the Collier declaration, the prison "followed all policies" throughout "the entirety" of the COVID-19 pandemic, including the "mandatory distancing protocols" and "mandatory mask mandates." 1-ER-6 (quoting 2-ER-120-122 (Collier Decl.)). By contrast, the court explained how Mr. Hintze "specifically assert[ed]" that the Lovelock Defendants "themselves failed to comply with the mask mandate instituted by NDOC, and that Defendants witnessed correctional officers at [Lovelock] failing to comply with [and enforce] the … mandate[s]—sometimes even coughing in the direction of inmates who complained—without intervening." 1-ER-5; *see* 2-ER-30-43. Beyond these competing factual assertions, the district court also noted that "[t]he parties contest when and how many times Hintze contracted COVID-19"—with Defendants arguing that Mr. Hintze contracted the virus only in January 2022. 1-ER-5 n.5.

13

Accordingly, the court held that, "[t]aking the evidence and allegations together, a reasonable trier of fact could find that Defendants violated Hintze's Eighth Amendment rights through deliberate indifference to the risk of disease." 1-ER-7. As to Defendants' qualified immunity defense, the district court concluded that, "under Ninth Circuit law, [Mr. Hintze] ha[d] a clearly established right to be free from exposure to contagious illnesses," such as COVID-19. 1-ER-8. And given that disputed facts remain as to whether Defendants' intentionally or recklessly disregarded violations of the COVID-19 protocols, the court could not "make a finding that Defendants are entitled to qualified immunity" in this procedural posture. 1-ER-9.

This interlocutory appeal followed.

## SUMMARY OF ARGUMENT

**I.** This Court lacks jurisdiction over Defendants' interlocutory appeal of the district court's denial of summary judgment.

**A.** There is no interlocutory appellate jurisdiction over a district court's determination that there are genuine issues of material fact. This Court can only consider an argument that, accepting the plaintiff's

14

version of events as true, the government official is entitled to qualified immunity because he did not violate a clearly established right. Nevertheless, Defendants brought an appeal that turns entirely on the district court's conclusion that genuine factual disputes preclude summary judgment. Arguing that the district court wrongly relied on purportedly inadmissible evidence to find facts disputed, Defendants refuse to accept Mr. Hintze's version of events when arguing they are entitled to qualified immunity. That is the kind of appellate challenge that this Court has repeatedly dismissed for lack of jurisdiction.

**B.** Defendants completely ignore the interlocutory nature of their appeal, citing almost exclusively cases that involve appeals from final judgment and that have no relevance to this Court's circumscribed interlocutory jurisdiction. Defendants never crafted this appeal with such limitations in mind, which is fatal to their premature effort.

**II.** Even if this Court has jurisdiction over Defendants' interlocutory appeal, it should affirm the district court's correct denial of summary judgment.

**A.** The district court correctly held that summary judgment was improper because a reasonable factfinder could conclude that

15

Defendants violated the Eighth Amendment. Taking Mr. Hintze's version of facts as true, Defendants knew of and disregarded pervasive violations of NDOC's COVID-19 protocols at Lovelock Correctional Center that contributed to Mr. Hintze contracting the virus twice and suffering serious, life-altering harms. A reasonable jury could conclude from the record that Defendants were subjectively aware of Mr. Hintze's risk of contracting COVID-19 and still acted with deliberate indifference towards that risk.

**B.** As this Court has concluded, and Defendants do not dispute, prison officials were aware long before the spring of 2020 that prisoners have a right to be free from exposure to a serious disease like COVID-19. Because there are disputed issues of fact that preclude resolution at summary judgment of whether Defendants, in fact, violated that clearly established right, this Court should affirm the judgment below.

**C.** Even assuming the reviewability of Defendants' arguments relating to the admissibility and sufficiency of Mr. Hintze's evidence, the arguments are both forfeited and meritless. Defendants did not raise any evidentiary objections before the district court and thus forfeited them for summary judgment purposes. Moreover, Defendants

16

ignore that Mr. Hintze submitted a two-page affidavit, as well as verified pleadings under penalty of perjury, where he indicated that he has personal knowledge of his factual allegations and is willing to testify at trial. Last, nothing in the record blatantly contradicts Mr. Hintze's testimony that he first contracted COVID-19 in December 2020. On the contrary, the record contains enough—including hundreds of other prisoners who contracted the virus around the same time—for a jury to credit Mr. Hintze's sworn testimony.

## STANDARD OF REVIEW

In an interlocutory appeal of a denial of summary judgment, this Court reviews de novo "whether the defendant would be entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor." *Estate of Anderson*, 985 F.3d at 731.

This Court also has "held consistently" that it "construe[s] liberally the filings and motions of a pro se inmate in a civil suit," and thus will not "apply[] summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). A pro se prisoner's allegations in verified pleadings attested under penalty of perjury, just

like a sworn declaration, constitute proper evidence at the summary

judgment stage.  *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## ARGUMENT

**I.  This Court Lacks Interlocutory Jurisdiction Because Defendants' Appeal Turns On The District Court's Determination That There Are Genuine Disputes Of Material Fact Precluding Summary Judgment.**

A clear jurisdictional "rule" decides this appeal:  "A 'public official

may not immediately appeal a fact-related dispute about the pretrial

record, namely, whether or not the evidence in the pretrial record was

sufficient to show a genuine issue of fact for trial.'"  *Peck v. Montoya*, 51

F.4th 877, 885 (9th Cir. 2022) (quoting *Estate of Anderson*, 985 F.3d at

731); *see Pauluk v. Savage*, 836 F.3d 1117, 1121 (9th Cir. 2016) ("[W]e

do not have jurisdiction over a district court's determination that there

are genuine issues of material fact…").  This Court can only hear an

argument, when raised, that the defendant is entitled to "qualified

immunity if the [plaintiff's] version of events were found to be true" by a

factfinder.  *Estate of Anderson*, 985 F.3d at 734.  "Unless [that] version

of events is 'blatantly contradicted by the record, so that no reasonable

jury could believe it'"—a narrow standard that Defendants never

invoke, much less attempt to satisfy—this Court "must" accept that

18

version from Mr. Hintze as true, regardless of any "conflicts with [Defendants'] account." *Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020).

Thus, whether this Court has interlocutory jurisdiction "turns on the nature of [Defendants'] argument on appeal." *Estate of Anderson*, 985 F.3d at 731. Only if Defendants raised the "purely legal question[]" of whether they are entitled to "qualified immunity under [Mr. Hintze's] version of the disputed facts" may this Court hear that challenge—and that challenge alone. *Id.* (first quote); *Wilkins v. City of Oakland*, 350 F.3d 949, 952 (9th Cir. 2003) (second quote). Because Defendants' appeal turns on whether the district court erred in concluding that triable issues of fact exist, this Court should dismiss the appeal for lack of jurisdiction.

### A. There is no interlocutory jurisdiction because Defendants' appeal turns on whether the district court erred in concluding that triable issues of fact exist.

**1.** The crux of Defendants' appeal is that "[t]he district court erred when denying Defendants' motion for summary judgment because the district court relied upon inadmissible evidence" and "conclusory allegations to establish a material *dispute of fact*." OB15, 18 (emphasis

19

added); *see* OB15-20. According to Defendants, Mr. Hintze's evidence "does not create a '*genuine dispute*' necessary to oppose summary judgment," and the district court erred in concluding otherwise. OB17-18 (emphasis added). The challenge is so central to Defendants' appeal that the opening brief is replete with references to this alleged error:

- "[T]he district court wrongly concluded Hintze presented admissible evidence that 'Defendants knew about the inadequate response to COVID-19 at [Lovelock].'" OB15.

- "The district court … erred when relying on inadmissible evidence…." OB16.

- "The district court … erred when relying on these conclusory allegations to establish a material dispute of fact." OB18.

- "[T]he district court again erred" in concluding there was "a question of material fact that Hintze's [*sic*] contracted COVID-19 prior to January 10, 2022,…because Hintze provided no admissible medical evidence to support this allegation." OB18.

- The district court could not point to "admissible evidence," and relied on "speculative" "allegations" to find disputed facts. OB24-25.[1]

These arguments are thinly veiled—if not overt—efforts to evade the jurisdictional bar and challenge the sufficiency of Mr. Hintze's

---

[1] As discussed below (at 45-47), Defendants waived all of these evidentiary objections by failing to challenge the admissibility of Mr. Hintze's evidence in their summary judgment briefing.

evidence. They seek review of the district court's determination that "there is enough evidence in the record for a jury to conclude that certain facts favorable to [Mr. Hintze] are true," which in turn creates a genuine issue of fact. *Estate of Anderson*, 985 F.3d at 734 (citation modified).

"Issues of admissibility relate only to what evidence is available to the fact-finder to find facts or draw factual inferences." *Ellis v. Salt Lake City Corp.*, 147 F.4th 1206, 1223 n.7 (10th Cir. 2025). That is why these evidentiary objections are attacks on the district court's determination that a genuine dispute of fact exists. *See Voskanyan v. Upchurch*, No. 21-55333, 2022 WL 4181664, at *1 (9th Cir. Sept. 13, 2022) (dismissing appeal for lack of jurisdiction where defendants "argue[d] there is 'no foundation' for [plaintiff's] claim that the custody defendants knew of the assault and failed to intervene"); *Munoz*, 47 F. App'x at 502 (rejecting argument turning on admissibility of evidence on jurisdictional grounds); *see also Ellis*, 147 F.4th at 1223 ("A district court's admissibility determinations are part of its determination that a genuine fact dispute exists," and thus "we hold that evidentiary objections are beyond the scope of our interlocutory jurisdiction");

21

*Bridges v. Morgan*, No. 21-12425, 2022 WL 342905, at *3 (11th Cir. Feb. 4, 2022) (per curiam) ("[The] argument [that evidence was inadmissible hearsay] is not one we have interlocutory jurisdiction to review since it merely concerns the facts a party may, or may not, be able to prove at trial." (citations and internal quotation marks omitted)); *Locke v. Haessig*, 788 F.3d 662, 672 n.4 (7th Cir. 2015) ("The admissibility of [hearsay] statement is not within the limited scope of our appellate jurisdiction on this interlocutory appeal."); *Whitlock v. Brueggemann*, 682 F.3d 567, 575 (7th Cir. 2012) ("Questions of admissibility are indeed legal questions; but they are not the sort of legal questions that are sufficiently separable from the merits so as to provide us with jurisdiction in a collateral-order appeal."); *Ellis v. Washington County*, 198 F.3d 225, 229 (6th Cir. 1999) (dismissing an interlocutory appeal for lack of jurisdiction even though "the only factual dispute in this cases arises from the rankest type of inadmissible hearsay").

Take, for example, *Munoz v. Curtis*, where this Court rejected for lack of jurisdiction an indistinguishable argument that the plaintiff "failed to produce authenticated, admissible evidence to support his assertions." 47 F. App'x at 502. This Court "le[ft] the authentication

and admissibility questions, and Munoz's response that this argument was waived, to the district court" after holding that its interlocutory jurisdiction "does not extend to disputed issues of material fact or questions about evidentiary sufficiency at summary judgment." *Id.*

Here, too, Defendants' flurry of evidentiary objections falls outside of this Court's interlocutory jurisdiction. Thus, this Court "cannot review [Defendants'] arguments that there was insufficient evidence to show that [Mr. Hintze] was unsafe, that the defendants acted with deliberate indifference, or that there was a causal relationship between the conditions at [Lovelock]" and Mr. Hintze contracting COVID-19 twice. *Pauluk*, 836 F.3d at 1121.

**2.** That leaves us with the question of whether, as in *Munoz*, Defendants' appeal is at least "based *in part* on questions of law relating to … qualified immunity," which would therefore be reviewable at this stage, if only in part. 47 F. App'x at 501 (emphasis added). The answer is no.

It is true that Defendants "argue that their conduct does not violate clearly established law, [but] they do so exclusively by asking this Court to take their version of the facts as true and arguing this

version of events does not violate [Mr. Hintze's] clearly established

constitutional rights." *Voskanyan*, 2022 WL 4181664, at *1. Consider

the following examples from Defendants' opening brief:

- "While [Mr.] Hintze eventually tested positive for COVID-19 in January 2022, Hintze fails to identify any action taken by any Defendant in the year prior to testing positive." OB12.

- "[T]he established facts demonstrate that NDOC and [Lovelock] appropriately responded to the COVID-19 pandemic," OB27, and "successfully prevented [Mr.] Hintze from contracting COVID-19 until January 10, 2022, after [he] received the COVID-19 vaccine," OB29 (internal citations omitted).

- "The district court erred because if [*sic*] failed to … recognize that NDOC's response effectively protected Hintze from suffering any adverse health effects upon contracting COVID-19." OB29-30.

- "The district court erred" in concluding that Mr. Hintze satisfied any "causation requirement" because "[c]onditions supposedly present [*sic*] December 2020 cannot be the cause-in-fact or proximate cause for Hintze's testing positive for COVID-19 on January 10, 2022." OB31-32.

- "Hintze … fails to identify any actions taken by Defendants within the year before Hintze contracted COVID-19 [in 2022]." OB35.

Defendants' narrative flies in the face of Mr. Hintze's testimony

that: (1) he "first contracted COVID-19 in December of 2020," before he

was vaccinated, 2-ER-43 (Hintze Decl. ¶7); (2) he was so ill that he

"fainted, fell face first on the concrete floor, and remained unconscious,"

24

*id.* ¶8; (3) he still suffers from serious symptoms associated with "long-COVID," such as "brain fog" and "respiratory issues," *id.* ¶9; and (4) each Defendant observed and heard about violations in 2020 and 2021 of the COVID-19 protocols at Lovelock Correctional Center, and yet deliberately declined to enforce the NDOC mandates and "ensure inmate safety," 2-ER-32 (SODF ¶6). *See supra* 6-11.

Because Defendants do not advance an argument that "'concedes the facts and seeks judgment on the law,'" this Court should adhere to its general rule "not [to] 'do [Defendants'] work for [them], either by manufacturing [their] legal arguments, or by combing the record on [their] behalf for factual support.'" *George*, 736 F.3d at 837 (citations omitted); *accord Bao Xuyen Le v. Molina*, 810 F. App'x 550, 551 (9th Cir. 2020). As it has done time and again in identical circumstances, this Court should dismiss the appeal for lack of jurisdiction. *See, e.g.*, *Voskanyan*, 2022 WL 4181664, at *2; *Estate of Anderson*, 985 F.3d at 734; *Bao*, 810 F. App'x at 551-52; *Ortiz v. Vizcarra*, 773 F. App'x 450, 450-51 (9th Cir. 2019); *Thomas v. Gomez*, 143 F.3d 1246, 1248-49 (9th Cir. 1998).

**B.    Defendants ignore this Court's limited jurisdiction and fail to show that their appeal can be heard.**

Defendants' opening brief has nothing to say about this Court's limited jurisdiction.  Not a word.  All but one of the cases Defendants cite challenging the existence of triable issues of fact were appeals from final judgment and, thus, did not implicate any interlocutory jurisdiction.  *See* OB15-20.[2]  The only case involving an interlocutory appeal, *Kayser v. Caspari*, is an out-of-circuit, three-paragraph opinion that did not mention jurisdiction once and predated the Supreme Court

---

[2] For ease of reference, the string cite follows the order in which the cases are cited in Defendants' opening brief: *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1407 (9th Cir. 1995) (appeal of grant of summary judgment in non-qualified-immunity case); *Taylor v. List*, 880 F.2d 1040, 1042 (9th Cir. 1989) (appeal of grant of summary judgment); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 771 (9th Cir. 2002) (appeal of grant of summary judgment in non-qualified-immunity case); *Whittaker v. Morgan State Univ.*, 524 F. App'x 58, 60 (4th Cir. 2013) (per curiam) (same); *Intermountain Fair Hous. Council v. Boise Rescue Mission Ministries*, 657 F.3d 988, 990 (9th Cir. 2011) (same); *Lowry v. City of San Diego*, 858 F.3d 1248, 1253 (9th Cir. 2017) (same); *Haggerty v. Fed. Ins. Co.*, 32 F. App'x 845, 847 (9th Cir. 2002) (same); *Gee v. Pacheco*, 627 F.3d 1178, 1181 (10th Cir. 2010) (appeal of grant of motion to dismiss); *Montgomery v. Pinchak*, 294 F.3d 492, 494 (3d Cir. 2002) (appeal of grant of summary judgment); *Felkins v. City of Lakewood*, 774 F.3d 647, 648 (10th Cir. 2014) (appeal of grant of summary judgment in non-qualified-immunity case); *Cox v. Benedetti*, 114 F. App'x 939 (9th Cir. 2004) (appeal of grant of summary judgment); *Walker v. Shansky*, 28 F.3d 666, 668 (7th Cir. 1994) (appeal of grant of summary judgment).

decision that established that "a fact-related dispute about the pretrial record" cannot be appealed, *Johnson v. Jones*, 515 U.S. 304, 307 (1995). *See* OB18 (citing *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994)). Thus, *Kayser* cannot help Defendants establish jurisdiction.

In *Kayser*, a prisoner who "disagree[d] with the course of treatment provided to him" sued two prison officials who, he claimed, were deliberately indifferent to his "kidney stone ailment." 16 F.3d at 281. The Eighth Circuit reversed the district court's denial of a motion for summary judgment because: (1) a radiology report that "found no evidence of an opaque foreign body and concluded that the kidneys were normal" contradicted the plaintiff's "self-diagnosis" that he was suffering from "kidney stones"; and (2) a mere "disagreement" with the kind of medical treatment received did not establish an Eighth Amendment violation. *Id.* at 281-82.

Defendants rely on *Kayser* to second-guess the fact-related determination that Mr. Hintze contracted COVID-19 in December 2020. *See* OB18. But not only did *Kayser* fail to address jurisdiction at all, but also the x-ray report in that case directly foreclosed the prisoner's self-diagnosis, which is why the court did not need to accept the prisoner's

27

version of events. Indeed, the report "blatantly contradicted" the plaintiff's "version of events" and rendered it "so utterly discredited by the record that no reasonable jury could have believed" a kidney-stone ailment that was essentially "visible fiction." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). That is a rare example where the blatant-contradiction standard is satisfied such that, even in an interlocutory appellate posture, a court can reject the plaintiff's facts in considering the merits of his constitutional claim. *See Ellis*, 147 F.4th at 1225 (describing "blatant-contradiction exception" as "limited" and "very difficult one to satisfy"); *Estate of Anderson*, 985 F.3d at 731 n.3 (describing exception as "narrow").

Here, however, Defendants have never acknowledged the blatant-contradiction standard, much less attempted to satisfy it—neither in their briefing below, nor in their opening brief on appeal. Thus, Defendants doubly waived any argument under the standard. *See Gribben v. United Parcels Serv., Inc.*, 528 F.3d 1166, 1171 (9th Cir. 2008) ("This argument was not presented to the district court, and therefore it has been waived."); *Alaska Ctr. For Env't v. U.S. Forest Serv.*, 189 F.3d 851, 858 n.4 (9th Cir. 1999) ("Arguments not raised in

28

opening brief are waived."). Even if they had, Defendants do not point to anything in Mr. Hintze's medical file that would blatantly contradict his sworn testimony that he contracted COVID-19 in December 2020. *Cf.* OB7-8 (discussing negative COVID tests only in August 2021 and early January 2022). On the contrary, there is other evidence in the record from which a reasonable jury could credit Mr. Hintze's testimony, including that there was a COVID outbreak in his housing unit during that time. *See infra* 48-50 (responding to Defendants' unreviewable evidence-sufficiency challenges).

*     *     *

Because Defendants do not show that their appeal can be heard in this interlocutory posture, this Court should dismiss it for lack of appellate jurisdiction.

## II. The District Court Did Not Err In Denying Defendants' Motion For Summary Judgment.

Even if there were jurisdiction, this Court must decide Defendants' claim to qualified immunity by "[t]aking the facts alleged by [Mr. Hintze] as true," while leaving any "authentication and admissibility questions … to the district court." *Munoz*, 47 F. App'x at 502; *see Peck*, 51 F.4th at 887 (explaining that, when conducting "the

qualified immunity analysis, we must accept the district court's determinations that there are genuine disputes of fact"); *supra* 18-19.

This Court should affirm the district court's denial of qualified immunity at summary judgment because, under Mr. Hintze's version of the events, a reasonable jury could find that Defendants (1) violated a constitutional right that (2) was clearly established at the time of the violation. *See Ballou v. McElvain*, 29 F.4th 413, 421 (9th Cir. 2022).

### A. A reasonable trier of fact could find that Defendants violated Mr. Hintze's constitutional right to be free from exposure to a serious illness.

The Eighth Amendment prohibits prison officials from acting with "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Farmer*, 511 U.S. at 828. To establish an Eighth Amendment violation in this context, the prisoner must satisfy an objective and a subjective requirement. *Id.* at 834. He must show that (1) he was exposed to a "substantial risk of serious harm" to his "health or safety" that "society [would not] choose[] to tolerate," and (2) the defendant "knew of and disregarded" that risk. *Hampton v. California*, 83 F.4th 754, 766-67 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2520 (2024) (citation modified); *see Thomas*, 611 F.3d at 1150 (defendant must be "aware of

[the] substantial risk of serious harm to [the] inmate's health or safety," and "ha[ve] no 'reasonable' justification for the deprivation, in spite of that risk" (citation omitted)).[3]

Supervisors may be held "liable for constitutional violations of [their] subordinates if [they] participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Similarly, "a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

**1.** As the district court found, a reasonable factfinder could conclude that Mr. Hintze's claim against both sets of Defendants—the

---

[3] Defendants' recitation of the law is imbued with errors. For example, their opening brief cites two cases—one from the Supreme Court and a non-precedential opinion from this Court—for the proposition that a prisoner satisfies the objective prong of an Eighth Amendment claim only if he shows "a 'strong likelihood' … of harm." OB20-21 (citing *Hudson v. Palmer*, 468 U.S. 517, 526 (1984); *Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007)). But *Hudson* is not even an Eighth Amendment case, and *Williams* does not contain the quoted statement.

NDOC and Lovelock Defendants—satisfies both objective and subjective requirements of his claim.

As to the first requirement, there is no question—and Defendants do not dispute—that "the risk of contracting COVID-19 was 'intolerably grave' such that involuntarily exposing inmates to the disease violated then-current standards of decency." *Hampton*, 83 F.4th at 766; *see* 1-ER-5 ("COVID-19 poses a substantial risk of serious harm."). As Defendants pointed out to the district court, NDOC purported to adopt "various precautionary measures [precisely] to address the COVID-19 pandemic and to prevent or slow the spread of the virus within [Lovelock Correctional Center]." 2-ER-60; *see supra* 6-7. These precautionary measures constitute unmistakable evidence "that a 'societal consensus' had emerged [in] 2020 that the [inmates'] risk of contracting COVID-19 was 'intolerably grave' such that involuntarily exposing inmates to the disease violated then-current standards of decency." *Hampton*, 83 F.4th at 766 (reaching conclusion based on "purpose of [a] shelter-in-place order" to "slow virus transmission as much as possible").

32

Next is the subjective requirement—that Defendants knew of and disregarded Mr. Hintze's risk of contracting COVID-19. A reasonable factfinder could easily conclude that, by March 2020, Defendants were subjectively aware that the risk of contracting COVID-19 was a substantial risk of serious harm to Mr. Hintze's health. Defendants' own evidence—from the Governor's emergency declaration and stay-at-home order to the NDOC COVID-19 protocols and CDC guidelines for prison facilities, 2-ER-65-75, 79-114—proves that the risk of harm from this deadly virus was "obvious" to them. *Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk [to a prisoner's health] from the very fact that the risk was obvious.").

This evidence shows that the risk of contracting COVID-19 was "pervasive, well-documented, [and] expressly noted by prison officials" in the NDOC protocols. *Thomas*, 611 F.3d at 1151 (quoting *Farmer*, 511 U.S. at 842). And given their roles as correctional administrators at NDOC and Lovelock, there is no question that Defendants "had been exposed to information concerning the risk [of contracting COVID-19] and thus 'must have known' about it." *Id.*; 1-ER-9 (MSJ Order) ("[T]he existence of well-publicized NDOC policy weighs towards a finding that

Defendants were on notice as to the constitutional implications of any actions unreasonably worsening the spread of COVID.").

So, the only question on which there could be *any* debate is whether Defendants "acted or failed to act despite [their] knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. And as the district court held, a reasonable factfinder could conclude that each Defendant disregarded the known risk of harm to Mr. Hintze from contracting COVID-19. *See* 1-ER-6-7 (MSJ Order). Consider each category of Defendants in turn:

*NDOC Defendants.* Daniels, Wickham, and Williams learned about violations to "*NDOC's own* [COVID] policy" in at least two ways, 1-ER-8 (MSJ Order) (emphasis added)—first, when they "toured" Lovelock Correctional Center "several times" between March and December 2020, and second, when they received "calls and emails" from advocacy groups alerting them to these violations at Lovelock, 2-ER-31 (SODF ¶4); *supra* 8-9. Each of these three NDOC Defendants "observed," and received "calls and emails" about, how the inmates at Lovelock were in crowded chow halls in violation of the social distancing mandate; and how the correctional officers "refused to wear masks,

34

sometimes coughed in the direction of inmates, and refused to enforce the rule requiring inmates at [Lovelock] to wear masks." 2-ER-31 (SODF ¶4).

*Lovelock Defendants.* Garrett, LeGrand, and Widmar also disregarded the COVID-19 protocols in various ways in 2020 and 2021. At a time when N95 masks needed to be worn at all times, they failed to wear masks themselves; observed the correctional officers doing the same and failing to enforce the policy; observed the prisoners standing in lines (and eating) in crowded chow halls without socially distancing; and received complaints about these violations from Mr. Hintze. *See* 2-ER-32 (SODF ¶5), 42-43 (Hintze Decl. ¶¶5-6); *supra* 9-10. Also, in November 2020, right before Mr. Hintze contracted the virus for the first time, these Lovelock Defendants directed correctional officers from a different prison that had recently experienced a COVID-19 outbreak to search Mr. Hintze's housing unit, who did so without wearing masks or gloves. 2-ER-151-53 (Compl.).

These are concrete factual assertions against *specific* Defendants that Mr. Hintze listed by name—not an effort to "impute[]" them with "the collective acts of NDOC," nor generalized allegations about

35

"NDOC's response" to the pandemic being "imperfect," as Defendants

contend (at OB22, 29). As the district court explained, "the central

issue is … whether Defendants deliberately declined to enforce

minimum precautions, including the precautions NDOC itself touted."

1-ER-7 (MSJ Order). Add to this that Defendants highlight that

"NDOC had the 8th lowest positive COVID-19 infection rate of

offenders in the nation" *at the beginning of the pandemic*, OB29, yet

completely failed to produce *any* evidence whatsoever about the rates

after the spring of 2020 (particularly, in December 2020 in Lovelock

Correctional Center). *Contrast* 2-ER-76-78, 116-17 (press releases

discussing rates in May and June 2020 across NDOC).

A reasonable factfinder could find, based on Mr. Hintze's evidence

and allegations (and other materials in the case), that: (1) Defendants

knew firsthand about the different violations of the COVID-19

protocols—and in the case of the Lovelock Defendants personally

refused to wear masks—and still failed to intervene or take corrective

action; and (2) this disregard for COVID-19 protocols contributed to Mr.

Hintze experiencing a substantial risk of serious harm, one that

manifested itself twice when he contracted the virus in December 2020

and January 2022, and experienced serious and long-term harms. And thus, such factfinder could conclude that Defendants knowingly disregarded—and thus acted with deliberate indifference to—the risks posed by COVID-19 in violation of the Eighth Amendment. *See Farmer*, 511 U.S. at 828, 834.

**2.** Defendants wrongly argue that Mr. Hintze failed to establish a causal connection between their alleged misconduct and his contraction of the virus in 2022. *See, e.g.*, OB12, 30-32, 35. That argument ignores key facts and misunderstands the law. It ignores Mr. Hintze's sworn testimony that he first contracted the virus in December 2020, as well as his allegations of continued protocol violations in 2021. 2-ER-42-43 (Hintze Decl. ¶¶6-7); 2-ER-157-60 (Compl.; describing "conditions of confinement" in "December 2020 – present"); *contrast* OB31. It also misunderstands the constitutional violation being alleged. The correct issue for consideration is whether Defendants were subjectively aware of a "substantial '*risk* of serious damage to [Mr. Hintze's] future health'"—not whether Defendants "acted or failed to act believing that [COVID-19] actually would befall" him. *Farmer*, 511 U.S. at 842-43; *cf. Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("We would think that a

37

prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery."); *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995) (rejecting argument that plaintiff must prove defendants actually knew there was asbestos in prison's attics to establish a constitutional claim).

For that reason, Defendants wrongly contend that Mr. Hintze could not prevail at trial without evidence that they *knew* of someone with COVID-19 (or with COVID-like symptoms) who "actually failed to wear a mask while in [his] vicinity and the same room as [him]." OB25. The Eighth Amendment does not require such granularity; nor does it make sense to insist on such proof given that the risk of contracting COVID-19 also existed if someone spreading the virus were asymptomatic (or before developing symptoms). 2-ER-69-74. That is why there were strict masking and social distancing mandates for *everyone* in prison facilities at all relevant times, especially before the vaccines had become available. *See id.*[4]

---

[4] Although more is not required, Defendants ignore Mr. Hintze's allegations that the Lovelock Defendants instructed correctional officers from another prison that had recently experienced a COVID-19 outbreak to come search Mr. Hintze's housing unit. *Supra* 9-10. And

38

Defendants further contend that Mr. Hintze's allegations about violations of the social distancing mandate cannot establish an Eighth Amendment claim because the NDOC and Lovelock protocols "were continually updated and implemented," and they had no control over the "space restraints" [*sic*] in the correctional center. OB26. But that is no response to Mr. Hintze's evidence and allegations that Defendants knew and disregarded how correctional officers would: (1) sometimes approach him and "intentionally cough in [his] direction" when asked why they were not wearing masks; (2) "intentionally stand very close to [him] and other inmates"; and (3) "force[]" him to be close to other inmates who were allowed not to wear masks. 2-ER-144 (Compl.); *supra* 7-9. Nor is it a response to the evidence and allegation that the Lovelock Defendants knowingly disregarded how Mr. Hintze and other prisoners were: (1) "shoulder-to-shoulder" and "physically touching" when walking from their housing unit to the chow hall; and (2) standing six inches apart in a single-file line while they waited for their meal trays, just as it was done before COVID-19 began. 2-ER-146 (Compl.).

_____

that search, in turn, was followed by hundreds of prisoners in Mr. Hintze's housing unit (including Mr. Hintze) contracting the virus. *Id.*

Nor did the district court "input[] wrongdoing on the part of the Defendants based on constraints over which they had no control." OB26. On the contrary, the district court explained that, even if some allegations taken alone "do not amount to constitutional violations given prisons' inherent limitations," it was "[Mr.] Hintze's asserted facts in combination" that precluded summary judgment. 1-ER-7 (MSJ Order) (citing *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981)).

### B. Defendants are not entitled to qualified immunity at summary judgment because the right to be free from exposure to a serious illness was clearly established.

**1.** Qualified immunity does not protect "an official [that] knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (citation modified). Thus, an official who violates a clearly established right is not immune from liability. Conduct violates a "clearly established" right if "the unlawfulness of the action in question [is] apparent in light of some pre-existing law." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1151-52 (9th Cir. 2021) (citation omitted). And although the right cannot be defined "at a high level of generality," qualified immunity

40

does not "require a case directly on point" for the unlawfulness of the action to be apparent. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018).

As the district court correctly concluded, "the right at issue … is the long-established right to be free from exposure to a serious disease." 1-ER-8 (MSJ Order) (quoting *Hampton*, 83 F.4th at 769 (alteration omitted)). This Court held in *Hampton* that this "right has been clearly established since at least 1993, when the Supreme Court decided *Helling*." *Hampton*, 83 F.4th at 769. *Helling* held that it would be an Eighth Amendment violation for prison officials to "expose[] [an inmate] to levels of" secondhand tobacco smoke "that pose[d] an unreasonable risk of serious damage to his future health," just as it would be for "prison officials [to be] deliberately indifferent to the exposure of inmates to a serious, communicable disease." 509 U.S. at 33, 35. Ninth Circuit caselaw has reaffirmed the same principle over the past four decades. *See Hampton*, 83 F.4th at 770 (collecting cases).

In words that could have been written for this case, this Court already held that "*all* reasonable prison officials would have been on notice in [the spring of] 2020 that they could be held liable for exposing inmates to a serious disease, including a serious communicable disease"

41

like "COVID-19." *Id.* (emphasis added). That ends the inquiry at this pretrial stage. Because there are genuine disputes of material fact as to whether Defendants in fact violated this clearly established right, the district court correctly denied summary judgment.

**2.** Defendants do not (and cannot) dispute that Mr. Hintze had a clearly established right not to be exposed to COVID-19. Instead, they do two things in response—both meritless.

First, Defendants wrongly argue that, although their "response [to the pandemic] may not have been perfect," there is no evidence that they "personally and knowingly disregarded the risk of COVID-19 to Hintze … within the year [he] contracted COVID-19" in 2022. OB35. But that argument—wrong as it is given the factual disputes, *see supra* 13-14, 24-25, 34-37—is irrelevant to whether the asserted right was clearly established. *See Ballou*, 29 F.4th at 421.

Second, Defendants wrongly attempt to distinguish *Hampton* on the basis that, unlike here, it involved the "transfer [of] an[] inmate." OB34. But that factual distinction does not get them anywhere, partly because Defendants never say what other right might be implicated if not the right to be free from exposure to a serious disease. The

42

distinction also mistakenly treats *Hampton* as the case that put Defendants on notice of the applicable constitutional right. But *Hampton* controls because it is binding precedent confirming that the relevant constitutional right became clearly established in *Helling* in 1993. And so, if the prison officials in *Hampton* were on notice that they could be held liable for exposing prisoners to COVID-19, so too Defendants in this case. *See Hampton*, 83 F.4th at 770; *see also Nazario v. Thibeault*, No. 22-1657, 2023 WL 7147386, at *2 (2d Cir. Oct. 31, 2023) (applying *Helling* to deny qualified immunity to prison officials for their COVID-19 response).

Moreover, *Hampton* itself—and countless other precedents— foreclose Defendants' factual distinction. "Binding caselaw 'need not catalogue every way in which' prison conditions can be constitutionally inadequate 'for [a court] to conclude that a reasonable official would understand that his actions violated' an inmate's rights." *Hampton*, 83 F.4th at 769 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (en banc)); *see Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) ("It is not necessary … that 'the very action in question has

43

previously been held unlawful.'").[5]  Thus, the fact that Mr. Hintze's case

involves the alleged disregard of COVID-19 protocols in one correctional

facility—and not on the way to another prison—is irrelevant.  *Cf.*

*Hampton*, 83 F.4th at 769 ("Plaintiff is not required to point to a prior

case" involving the "transfer[] [of] inmates from one prison to another

during a global pandemic" to establish an Eighth Amendment

violation).  Here, too, *Helling* provides the basis for the clearly

established right that a reasonable factfinder might conclude

Defendants violated.

*   *   *

If this Court exercises its circumscribed jurisdiction over this

interlocutory appeal, it should affirm the denial of summary judgment

---

[5] Careful adherence to this admonition is especially important to avoid expanding a doctrine that is both atextual and ahistorical.  *See, e.g.*, *Baxter v. Bracey*, 140 S. Ct. 1862, 1864 (2020) (Thomas, J., dissenting from denial of cert.) ("There likely is no basis for the objective inquiry into clearly established law that our modern cases prescribe"); *Sosa v. Martin County*, 57 F.4th 1297, 1304 (11th Cir. 2023) (Jordan, J., joined by Wilson & Jill Pryor, JJ., concurring in the judgment) ("[T]he Supreme Court's governing (and judicially-created) qualified immunity jurisprudence is far removed from the principles existing in the early 1870s."); *McKinney v. City of Middletown*, 49 F.4th 730, 757 (2d Cir. 2022) (Calabresi, J., dissenting) ("[T]here was no common law background that provided a generalized immunity that was anything like qualified immunity.").

44

based on the arguments presented above, which presume the veracity of Mr. Hintze's version of the facts at the summary judgment stage.

### C. Defendants' remaining arguments, if reviewable, are forfeited and meritless.

Even accepting Defendants' expansion of this Court's circumscribed jurisdiction by considering questions of admissibility and evidentiary sufficiency, this Court should nonetheless affirm.

**1.** Defendants argue that Mr. Hintze had no admissible evidence to establish a genuine dispute of material fact. The opening brief contends that Mr. Hintze lacked personal knowledge about certain allegations, failed to provide a proper foundation for them, and relied on inadmissible hearsay. *See* OB15-20. But as noted above (at 20 n.1), Defendants did not raise *any* of these arguments below and *never* objected to the admissibility of Mr. Hintze's evidence and allegations. *See* 2-ER-20-25 (Defs' MSJ Reply), 51-62 (Defs' MSJ).

The closest thing to an objection is in Defendants' summary judgment reply, which simply stated—without any argument or elaboration—that Mr. Hintze "fails to identify any evidence, let alone admissible evidence, that would contradict Defendants' evidence and version of events." 2-ER-21. Never mind Mr. Hintze's declaration and

his sworn complaint. Regardless, Defendants' passing, conclusory sentence is not an evidentiary objection of any kind, nor does it identify any evidentiary basis for an objection. That dooms Defendants' evidentiary arguments on appeal because the "failure to object to allegedly defective evidence waives the objection for purposes of summary judgment." *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1094 (9th Cir. 1990); *Fireguard Sprinkler Sys., Inc. v. Scottsdale Ins. Co.*, 864 F.2d 648, 651 n.2 (9th Cir. 1988) (by failing to "file a motion to strike the affidavit in the district court … 'that is allegedly defective under Rule 56(e), [defendant] … waive[d] [his] objection'" at summary judgment). Accordingly, Defendants "forfeited th[ese admissibility] objection[s] by failing to raise [them] in the district court." *Sandoval v. County of San Diego*, 985 F.3d 657, 683 n.18 (9th Cir. 2021).

Given Defendants' failure to object, it could not have been an abuse of discretion for the district court to consider such evidence in concluding there are disputed questions of fact. *Cf. Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008) (this Court reviews for abuse of discretion a district court's evidentiary rulings in connection to a final judgment, when such rulings are reviewable). On the contrary,

the district court avoided committing error by doing so. *Cf. Skillsky*, 893 F.2d at 1094 ("For purposes of summary judgment, the court had to consider the testimony, even if it was hearsay, because [the defendant] failed to object"); *accord Jones*, 393 F.3d at 935 (reversing and remanding with instructions to consider evidence in verified pleading).

Even if this Court were to consider Defendants' newly raised arguments, they lack merit for several reasons. To start, none of the evidentiary objections in Defendants' opening brief addresses the *Lovelock* Defendants. *See* OB15-18. Nor could they; Mr. Hintze interacted with them at the prison, and he saw firsthand their disregard for the COVID-19 protocols and the violations by other correctional officers. Thus, none of these arguments affects the denial of summary judgment as to the Lovelock Defendants.

The belated evidentiary objections apply only to the allegations that the *NDOC* Defendants were aware of the different violations of the COVID-19 protocols because they observed them when they toured Lovelock multiple times during 2020, and when they received calls and emails from advocacy groups informing them of the conditions at the prison. *See id.* Defendants latch on to a single phrase that Mr. Hintze

made in passing in his verified complaint—"upon information and belief," 2-ER-144—to argue that these allegations are not evidence entitled to any weight. OB15-16. But that gotcha-type argument ignores Mr. Hintze's two-page affidavit at summary judgment reiterating these "factual allegations," asserting that they "are true and made based on [his] personal knowledge," and that he "intend[s] to testify at trial as to those allegations." 2-ER-42 (Hintze Decl. ¶¶2-3). The argument also defies this Court's admonition that a prisoner's filings must be construed "liberally." *Thomas*, 611 F.3d at 1150. By Defendants' latching on to a passing use of legalese in one sentence in the complaint, they ignore both Mr. Hintze's assertion of personal knowledge in the affidavit and common sense. Mr. Hintze can testify about what the NDOC Defendants observed when they toured Lovelock precisely because he is incarcerated in that very facility and saw them.

It will be up to Defendants to raise their objections at trial and for Mr. Hintze—perhaps with assistance from counsel—to testify and offer admissible evidence.

**2.** Defendants also argue that the district court erred in denying summary judgment because Mr. Hintze could not prove his sworn

testimony that he first contracted COVID-19 in December 2020. OB18-20. That is an unreviewable evidentiary-sufficiency argument if there were ever one. *See George*, 736 F.3d at 834 (explaining that "questions of evidentiary sufficiency" concern "which facts a party may, or may not, be able to prove at trial"). Nonetheless, the argument is meritless. As discussed above (at 27-29), Mr. Hintze is not relying on a "self-diagnosis" of COVID-19 that is blatantly contradicted by the available medical evidence such as to be "visible fiction," *Scott*, 550 U.S. at 381, as was the case in *Kayser* where an x-ray report directly disproved the prisoner's assertion that he had kidney stones. *Supra* 27-29; *contrast* OB18. In fact, Defendants do not point to anything in his medical file that contradicts Mr. Hintze's sworn testimony that he contracted COVID-19 in December 2020, and became so ill that he blacked out. *Supra* 29.

Nor is this a case involving a self-diagnosis and nothing more, such as a prisoner's unsupported assertions that he has HIV, or that he suffers from some idiopathic ailment (such as kidney stones), or that certain lumps on his neck are cancerous tumors. *Contrast* OB18-19. A reasonable factfinder could rely on Mr. Hintze's testimony that

49

numerous prisoners in his housing unit contracted the virus in December 2020, shortly after the Lovelock Defendants instructed officers from another prison that had a COVID-19 outbreak to come to Lovelock and search various housing units. *Supra* 9-10. The fact that this all happened at the height of the COVID-19 pandemic, and before vaccines were available, further bolsters the credible assertion that Mr. Hintze first contracted the virus at that time.[6] Given all this, the district court did not err in concluding there was sufficient evidence to establish genuine disputes of material fact precluding summary judgment.

## CONCLUSION

This Court should dismiss Defendants' interlocutory appeal for lack of appellate jurisdiction or, in the alternative, affirm the district court's judgment denying Defendants' motion for summary judgment.

---

[6] As noted above, despite NDOC's press releases boasting about low positivity rates early in the pandemic (around May 2020), 2-ER-76-78, 116-17, Defendants tellingly did not produce any evidence about the rates in December 2020 or even in Lovelock Correctional Center. *Cf.* 2-ER-32-33 (SODF ¶¶11-12) (Mr. Hintze arguing that press release does not reflect NDOC's COVID-19 positivity rates in December 2020, which were "many times higher … than in June or August of 2020").

50

October 8, 2025

Respectfully submitted,

/s/ Cesar Lopez-Morales

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street, NW
Front 1, No. 33821
Washington, DC 20033

Cesar Lopez-Morales
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 339-8400

Christopher J. Cariello
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

*Counsel for Plaintiff-Appellee*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** 24-6806

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** s/Cesar Lopez-Morales          **Date** October 8, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17**                                                                                   *New 12/01/18*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-6806

I am the attorney or self-represented party.

**This brief contains 9,770 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs;
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Cesar Lopez-Morales    **Date** October 8, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**    *Rev. 12/01/22*